IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 13-cr-00473-RM

UNITED STATES OF AMERICA,

       Plaintiff,

v.

**1.    GARY SNISKY**,

       Defendant.
_____

**GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS STATEMENTS [# 50]**
_____

      THE UNITED STATES OF AMERICA, by United States Attorney John F. Walsh, through Assistant United States Attorney Pegeen D. Rhyne, hereby responds to the defendant's Motion to Suppress Statements [# 50].  Because defendant Snisky was not in custody and his statements were voluntary, his motion should be denied.

## Background Facts

      On January 17, 2013, at a little before 8:10 a.m., four federal agents approached the front door of defendant Snisky's office located at 710 Tenacity, 1st Floor, Longmont, Colorado.  None of the agents had their weapons drawn or displayed, and none were wearing raid jackets or tactical gear.  One of the agents knocked on the front door, and either defendant Snisky or D.S.[1] opened the door.  Defendant Snisky invited the agents into the office.  One of the agents asked if the agents could speak to defendant Snisky and D.S., and IRS Special Agent ("SA") Ronald Loecker asked if the agents could speak to them separately.  Defendant Snisky replied in a very congenial tone something to the

---

[1] For privacy reasons, persons other than defendant Snisky and law enforcement officers will be referred to by their initials.

effect of "Oh yeah, no problem" and led the group to two different rooms within the office space. Defendant Snisky indicated which room D.S. should go into in order to speak to agents. IRS SA Loecker and another agent went into that room with D.S. Defendant Snisky walked into a larger conference room and sat at the head of the conference table. FBI SA Funk and Postal Inspector Rob Barnett followed Snisky and sat next to each other on one side of the conference table. SA Funk sat in the seat next to defendant Snisky, but SA Funk was still about three feet away from Snisky.

SA Funk, who was six months pregnant at the time, took the lead in asking questions during the interview. Approximately one hour into the interview, defendant Snisky became suspicious and asked what the interview was all about. At that point, SA Funk informed defendant Snisky that the agents were there to execute a search warrant, and she provided a copy of the search warrant to defendant Snisky. Up until that time, agents had not secured the office or begun their search. In fact, other people had arrived and freely entered the office space during the interviews.

Shortly after a copy of the warrant was provided to Snisky, other agents entered the office space and began executing the search warrant. The agents did not have their weapons drawn at any time. Including the four agents participating in the interviews, there were a total of 13 agents present during the execution of the search warrant.

When SA Funk provided defendant Snisky with a copy of the search warrant, she told defendant Snisky that he was not under arrest. At that time, defendant Snisky stated that he wanted to invite A.L., who was an attorney employed by defendant Snisky's company, into the interview. SA Funk responded, "No problem." One or both of the

agents accompanied defendant Snisky to find A.L., who was near the conference room. After A.L. joined the interview, the interview continued for approximately 20 additional minutes. At the end of the interview, SA Funk requested that defendant Snisky make a written statement about some of the things he had told the agents. Defendant Snisky told SA Funk that he wanted to provide a written statement, but that he wanted to consult with an attorney before doing so. The interview concluded at approximately 9:30 a.m.

After the interview concluded, SA Funk told defendant Snisky that he was free to leave the premises, but, if defendant Snisky chose to stay, he would be required to stay in the conference room during the search. Defendant Snisky chose to stay and remained in the conference room with A.L. Defendant Snisky was escorted to the restroom at some point during the search warrant.

From approximately 11:45 a.m. until 12:00 p.m., IRS SA Ronald Loecker asked defendant Snisky several additional questions with A.L. present. When SA Loecker entered the conference room, defendant Snisky and A.L. were seated together at the conference table. SA Loecker joined them at the table. At no point during this short interview did SA Loecker have his weapon drawn or displayed.

### *Miranda* Warnings Were Not Required Because Defendant Was Not in Custody

"It is well established that police officers are not required to administer Miranda warnings to everyone whom they question." *United States v. Erving L.*, 147 F.3d 1240, 1246 (10th Cir. 1998) (quotations and citations omitted). Rather, police officers must provide such warnings only when individuals are subject to "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). A suspect is not in custody for

purposes of *Miranda* unless the "suspect's freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (internal quotations omitted). The analysis of whether a suspect's freedom of action has been curtailed to such a degree is objective; the question is whether a reasonable person in the suspect's position would have understood his situation as the "functional equivalent of a formal arrest." *Id.* at 442. Only the restraint imposed by the officers is relevant to the analysis; pressures to speak emanating from sources other than official coercion are irrelevant. *See Erving L.*, 147 F.3d at 1247.

The atmosphere surrounding the January 17, 2013, interviews was far from the type of "police dominated" atmosphere identified as custodial in *Miranda*. *Miranda*, 384 U.S. at 445, 456; *see also Erving L.*, 147 F.3d at 1247. Both interviews occurred at the defendant's office. This setting is significant because "courts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings." *United States v. Ritchie*, 35 F.3d 1477, 1485 (10th Cir. 1994), quoting 1 W. LaFave, *Criminal Procedure* § 6.6(e), at 496 (1984 & 1991 supp.); *cf., e.g., United States v. Revels*, 510 F.3d 1269, 1275 (10th Cir. 2007) (defendant found to have been in custody where officers forcibly entered her home, handcuffed her, and placed her faced down on the floor while they secured the residence for a search warrant).

The first interview began at 8:10 a.m. and lasted 1 hour and 20 minutes. During the first hour, defendant Snisky did not know the agents had a search warrant or that nine other agents were waiting to assist in executing the search warrant. After he learned of the search warrant, SA Funk told him that he was not under arrest. At this point,

defendant Snisky invited A.L., an attorney working for his company, to be present for the last 20 minutes of the interview.  No weapons were drawn or displayed.  After this interview, defendant Snisky was specifically told he was free to leave the premises.  He chose not to.  SA Loecker began the second interview at 11:45 a.m., and it lasted 15 minutes.  A.L. was present the entire time.  SA Loecker did not draw or display his weapon.

Based on the facts in this case, it is simply not the case that "[a]ny reasonable person in [defendant Snisky's] position would have felt completely at the mercy of the police" at the time of his interview with SA Funk and Inspector Barnett or during his later brief interview with SA Loecker.  *United States v. Perdue*, 8 F.3d 1455, 1463 & 1465 (10th Cir. 1993) (quotations omitted).  Because defendant Snisky was not in custody at the time that he made voluntary statements to the agents, he was not entitled to *Miranda* warnings, and the Court should not suppress the statements he made on January 17, 2013.

## Because Defendant Snisky Was Not In Custody, He Did Not Have a Right to Counsel

Defendant Snisky may argue that, when he said he would provide a written statement after consulting with an attorney, he was invoking his right to counsel.  The government denies that defendant Snisky unequivocally invoked any right to counsel by making that statement.  However, as a matter of law, even if he did, defendant Snisky's rights would not have been violated in any way when SA Loecker spoke to defendant Snisky two hours later because defendant Snisky was not in custody and did not have a Fifth Amendment right to counsel.  Accordingly, any such allegation should not be

considered when analyzing whether defendant Snisky was in custody or whether his statements were voluntary.

"We have never held that a person can invoke his *Miranda* rights anticipatorily, in a context other that 'custodial interrogation.'" *McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991); *accord United States v. Bautista*, 145 F.3d 1140, 1151 (10th Cir. 1998); *see also Burket v. Angelone*, 208 F.3d 172, 197 (4th Cir. 2000) (defendant cannot invoke *Miranda* when not in custody); *United States v. Grimes*, 142 F.3d 1342 (11th Cir. 1998) (*Miranda* can only be invoked during or immediately before a custodial interrogation); *Alston v. Redman*, 34 F3d 1237, 1246 (3d Cir. 1994) (allowing an individual to invoke *Miranda* rights outside the custodial interrogation context would be an unwarranted extension of *Miranda's* procedural safeguards; court found defendant's invocation of his right to counsel ineffective because he was not in a "custodial interrogation").

In his motion, defendant Snisky also claims a violation of his Sixth Amendment right to counsel [# 50 at 2]; however, because defendant Snisky had not been charged with anything as of January 17, 2013, he did not have a Sixth Amendment right to counsel. *See McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).

### Defendant Snisky's Statements Were Also Voluntary

"The essence of voluntariness is whether the government obtained the statements by physical or psychological coercion such that the defendant's will was overborne." *United States v. Rith*, 164 F.3d 1323, 1333 (10th Cir. 1999). The government must prove by a preponderance of the evidence that the defendant's statements were voluntarily. *See Colorado v. Connelly*, 479 U.S. 157, 167 70 (1986) (preponderance of

evidence standard governs voluntariness determinations). A totality of the circumstances approach is used, and the following five factors are considered in making this determination: (1) the defendant's age, intelligence, and education; (2) the length of any detention; (3) the length and nature of any questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to physical punishment. *Rith*, 164 F.3d at 1333, *citing United States v. Glover,* 104 F.3d 1570, 1579 (10th Cir. 1997); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) ("Some of the factors taken into account have included the youth of the accused; his lack of education, or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.") (citations omitted)

In *Connelly*, the Supreme Court clarified and refined the totality of the circumstances test by holding that improper coercive police activity must occur for suppression of any statement. *See Connelly*, 479 U.S. at 167 70 (noting that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"). "*Connelly* makes it clear that ... personal characteristics of the defendant are constitutionally irrelevant absent proof of coercion." *Erving L.*, 147 F.3d at 1249. A confession is only involuntary when "the police use coercive activity to undermine the suspect's ability to exercise his free will." *United States v. Lugo*, 170 F.3d 996, 1004 (10th Cir. 1999) (internal quotation marks and citations omitted).

Nothing in the record indicates that any of the agents engaged in the type of

7

coercive activity that serves as the condition precedent for finding that defendant's statements were involuntary. Defendant Snisky merely makes conclusory assertions that he was threatened and coerced without providing any factual support for these allegations. These bald allegations do not amount to a showing of police coercion.

Additionally, most of the other factors also weigh in favor of a finding of voluntariness. Defendant Snisky appears to be an adult with above average intelligence, he was never detained, the first interview lasted approximately 1 hour and 20 minutes, the second interview lasted 15 minutes, and defendant was not subjected to threats or physical punishment. *See Rith*, 164 F.3d at 1333. There are simply no facts that suggest that the interviews involved "physical or psychological coercion such that the defendant's will was overborne." *See Rith*, 164 F.3d at 1333.

Accordingly, defendant Snisky's statements were voluntary and his motion to suppress should be denied.

## Conclusion

For the reasons set forth above, the government requests that the Court deny defendant Snisky's Motion to Suppress Statements.

JOHN F. WALSH
United States Attorney

By: *s/Pegeen D. Rhyne*
PEGEEN D. RHYNE
Assistant U.S. Attorney
1225 17th Street, Suite 700
Denver, Colorado 80202
(303) 454-0100
(303) 454-0409 (fax)
Pegeen.Rhyne@usdoj.gov
Attorney for Government

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of June, 2014, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS STATEMENTS [# 50]** with the Clerk of the Court using the CM/ECF system which will send notification of the same to any and all counsel of record.

By: *s/ Solange Reigel*
SOLANGE REIGEL
Legal Assistant
United States Attorney's Office
1225 17th Street, Suite 700
Denver, CO 80202
Telephone: 303-454-0100
Facsimile: 303-454-0409
E-mail: Solange.Reigel@usdoj.gov