IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 13-cr-00473-RM

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.     GARY SNISKY,

       Defendant,

_____

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR STATUTORY SENTENCE AND/OR DOWNWARD DEPARTURE [DOC # 115]**
_____

THE UNITED STATES OF AMERICA, by United States Attorney John F. Walsh, through Assistant United States Attorney Pegeen D. Rhyne, hereby files its Response in Opposition to Defendant's Motion for Statutory Sentence and/or Downward Departure [DOC # 115].

In his motion, defendant Snisky requests a sentence of probation because: (1) his family needs him; and (2) he is a really good guy who never meant to hurt anyone but who just got carried away in pursuing his business ideas.   [Doc #115].   Defendant's motion should be denied, and the Court should sentence him to a term of imprisonment for 97 months.

## Snisky's Family Circumstances do not

## Warrant a Departure or Variant Sentence

Defendant Snisky's motion does not identify any extraordinary family circumstances that this Court should take into account when sentencing defendant

Snisky.   [Doc # 115 at pp 1-5].   Rather, it describes ordinary challenges faced by many families who juggle work and child rearing responsibilities and who would love for their children to be involved in enrichment programs but may not have the resources to manage it.   [*Id.*].   Undoubtedly, defendant Snisky's incarceration will be a burden to his family, but this is true of every parent/spouse who comes before this Court to be sentenced.   The Court should not depart or vary downward based on defendant Snisky's family circumstances.

### Defendant Snisky Engaged in a Calculated Fraud

Throughout his motion, defendant Snisky attempts to minimize his fraudulent conduct in this case: "Mr. Snisky is a failed business man" [Doc # 115 at pg 3]; "Gary Snisky is a very good man who utterly failed, with damaging consequences, at a very serious business which was way over his head" [*id.* at pg. 7]; "[t]his man could not have set out to hurt anyone with his investment ideas and is beyond burdened that he did so" [*id.*]; "he ventured into the world of investment, a world he mistakenly believed he understood and within which he believed he could prosper while helping others to prosper as well" [*id.* at pg. 10]; "[h]e just got carried away with painting himself as a man with significant experience" [*id.* at pg. 11]; and "Mr. Snisky needed guidance and structure. Without either one[,] the honest, decent man described in the letters turned to using money in ways he was not supposed to" [*id.*].   Defendant Snisky appears to claim that the $5.2 million fraud scheme to which he pled guilty happened quite by accident.

These claims are self-serving and belied by the record in this case.   Defendant Snisky's lies were not the result of "getting carried away" or getting in over his head.

Defendant Snisky's lies were important lies designed to manipulate the victims in this case into making investments with defendant Snisky that they never would have made had defendant Snisky not lied.   Defendant Snisky repeatedly told financial advisors and investors that he was an "institutional trader" who was "on Bloomberg," which he said made him part of an elite group of people who could "make markets" and who had access to lucrative opportunities to which ordinary investors did not have access.   [Doc # 100 at pp. 11-12].   Defendant Snisky said he could make money for the Bond Program by participating in the "overnight lending program," like other institutions.   [*Id.* at pg. 12]. Knowing he had not purchased any bonds, defendant Snisky repeatedly touted the safety of investing in his Bond Program because the Ginnie Mae bonds were backed by the "full faith and credit of the United States."   [*Id.* at 11].   Defendant Snisky provided to victims in the futures program false documentation representing that Colony Capital had earned 22% per year trading in the futures market for the past two years.   [*Id.* at 10].   These many and varied lies were not accidental.   Each of these lies was specifically calculated to persuade investors into handing over their money.   Had defendant Snisky told investors that he never traded on Bloomberg, had no licenses, had no history of success, had never purchased Ginnie Mae bonds, and had no special access to investments or the overnight lending program, few, if any, investors would have handed their money over to defendant Snisky.   Defendant Snisky knew that.   So he lied.

Nor did the lies stop after defendant Snisky obtained investor money.   Defendant Snisky sent the investors completely fabricated investment statements to falsely reassure them that their money was invested and earning money as promised.   [*Id.* at pp. 12-13].

3

Even after the search warrant was executed in this case in January 2013, defendant Snisky continued his lies.   In a recorded call on February 28, 2013, defendant Snisky falsely told 4 victims who had invested in the futures trading program that they would all get their money back.   Given that defendant Snisky had spent more than half of their money, he knew that was not true.   Throughout much of 2013, defendant Snisky falsely told victim C.P. that her invested money was safe because it was secured by the building at 710 Tenacity, Longmont, Colorado.   Snisky knew that was not true.   In November 2013, defendant Snisky falsely told victim J.L. that he would get all of his investment money back.   Again, Snisky knew that was not true.

Defendant Snisky's calculated, deliberate, and repeated lies demonstrated his calloused disregard for the very real and significant harm that he caused to the victims in this case.   Snisky's attempt to characterize himself as a good man who simply got carried away is incredible and offensive.   Specific deterrence is a very real need in this case.   General deterrence is equally important.   The Court should not downwardly depart or vary from the guideline sentence.

## Conclusion

As set forth in its Sentencing Statement [Doc # 104], the government intends to

present evidence at sentencing to support the sentencing guideline calculation in the plea

agreement.    The government asks the Court to sentence defendant Snisky to 97 months

of imprisonment, 3 years of supervised release, and $ 2,531,032.22 in restitution.


JOHN F. WALSH
United States Attorney

By:*s/Pegeen D. Rhyne*
PEGEEN D. RHYNE
Assistant U.S. Attorney
1225 17th Street, Suite 700
Denver, Colorado 80202
(303) 454-0100
(303) 454-0409 (fax)
Pegeen.Rhyne@usdoj.gov
Attorney for Government

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June, 2015, I electronically filed the foregoing **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR STATUTORY SENTENCE AND/OR DOWNWARD DEPARTURE [DOC # 115]** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.

s/Grazy Banegas
Grazy Banegas
Legal Assistant
grazy.banegas@usdoj.gov