IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 13-cr-473-RM-1

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

GARY SNISKY,

    Defendant.
_____

**REPORTER'S TRANSCRIPT**
CHANGE OF PLEA HEARING
_____

    Proceedings before the HONORABLE RAYMOND P. MOORE,
Judge, United States District Court for the District of
Colorado, occurring at 4:53 p.m., on the 5th day of February,
2015, in Courtroom A601, United States Courthouse, Denver,
Colorado.

**APPEARANCES**

    PEGEEN RHYNE, Assistant U.S. Attorney, 1225 17th
Street, Suite 700, Denver, Colorado, 80202, appearing for the
Government.

    ROBERT PEPIN, Assistant Federal Public Defender, 633
17th Street, 10th Floor, Denver, Colorado, 80202, appearing for
the defendant.

TAMMY HOFFSCHILDT, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

1    **P R O C E E D I N G S**

2         (In open court at 4:53 p.m.)

3              *THE COURT:*  Please be seated.  All right.  13-cr-473,

4    United States versus Gary Snisky.  Take appearances, please.

5              *MS. RHYNE:*  Good afternoon, Your Honor.  Pegeen Rhyne,

6    for the United States.

7              *THE COURT:*  Mr. Pepin.

8              *MR. PEPIN:*  Robert Pepin, appearing with Mr. Snisky.

9    He is present.

10             *THE COURT:*  Mr. Snisky, good afternoon to all of you

11   you.

12             First, let me apologize to you for the setting, but

13   the calendar is a bit of a mess, and this is when I figured we

14   could do it, and there's no marshal involved.

15             Then second, let me thank you for accommodating my

16   desire to have this done at this time.

17             All right.  We're here for a *Change Of Plea.*

18   Mr. Pepin, would you and Mr. Snisky please go to the podium?

19             *MR. PEPIN:*  Of course, Your Honor.

20             *THE COURT:*  Mr. Snisky, before we can proceed, you

21   have to take an oath to tell the truth.  So if you will raise

22   your right hand face my courtroom deputy, she will administer

23   the oath.

24        (**Gary Snisky** was sworn.)

25             *THE DEFENDANT:*  I do, yes.

1          THE COURT:  All right, sir.  Do you understand that

2    you are now under oath?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And I think -- bend that up a little bit

5    then -- I think it will.

6          MR. PEPIN:  Push it over.  Bend it down, away.

7          THE COURT:  I don't think you are going to have to

8    lean into it.  I think it will pick you up fine, sir.  If I

9    can't hear you, I will let you know.

10         THE DEFENDANT:  Thank you.

11         THE COURT:  All right.  Being under oath means that

12   you have to answer my questions truthfully today, because, if

13   you, essentially, lie, or knowingly answer a question falsely,

14   then that could later be used against you in a prosecution for

15   perjury or making a false statement.  Understood?

16         THE DEFENDANT:  Yes.

17         THE COURT:  If, at any time today, you don't

18   understand what I'm saying, I want you to interrupt me and let

19   me know.  Okay?

20         THE DEFENDANT:  Yes.

21         THE COURT:  What is your full name?

22         THE DEFENDANT:  Gary Christopher Snisky.

23         THE COURT:  How old are you?

24         THE DEFENDANT:  Forty-eight.

25         THE COURT:  How far did you go in school?

1          THE DEFENDANT:  College graduate.

2          THE COURT:  Silly question.  I assume that means you

3     can read?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Since the time of your arrest in this

6     matter, have you been treated for any form of mental illness or

7     addiction to narcotic drugs of any kind?

8          THE DEFENDANT:  No.

9          THE COURT:  Are you currently under the influence of

10    any drug, medication or intoxicant of any kind?

11         THE DEFENDANT:  No.

12         THE COURT:  Are you able to think clearly and make

13    intelligent decisions as you stand here today?

14         THE DEFENDANT:  Yes.

15         THE COURT:  All right.  Do you have before you a copy

16    of the Indictment, which is the charges against you, in this

17    case?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And let me be clear ... have you discussed

20    the Indictment and the charges and the case in general with

21    Mr. Pepin, your attorney?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Have you had enough time to discuss the

24    charges with him?

25         THE DEFENDANT:  Yes.

1          *THE COURT:*  And are you fully satisfied with the

2     counsel, representation and advice given to you in this case,

3     by Mr. Pepin?

4          *THE DEFENDANT:*  Yes.

5          *THE COURT:*  Now, the *Plea Agreement* calls for a plea

6     to Counts 2 and 14 of the Indictment, as well as an admission

7     to the forfeiture allegation.  Before we can proceed in that

8     respect, I want to just cover a couple of little things.  I

9     could have these charges read out loud to you here in open

10    court today, but I don't have to.  You can waive or give up the

11    reading, because you know what it says, you have met with

12    counsel, you have got a copy in front of you.  I'm happy to

13    proceed whichever way you wish to.

14         *THE DEFENDANT:*  Your Honor, I just went through it

15    with him.

16         *THE COURT:*  So you waive the reading?

17         *THE DEFENDANT:*  Yes.

18         *THE COURT:*  Before asking you how you wish to plead, I

19    need to remind you that you have the right to plead not guilty

20    to these counts, just as you did before the Magistrate Judge.

21    Understood?

22         *THE DEFENDANT:*  Yes.

23         *THE COURT:*  With respect to the Indictment in

24    13-cr-473, more specifically, Count 2 and 14, are you the Gary

25    Snisky named in those counts?

1          *THE DEFENDANT:*  Yes.

2          *THE COURT:*  With respect to Count 2, how do you wish

3    to plead, guilty or not guilty?

4          *THE DEFENDANT:*  Guilty.

5          *THE COURT:*  And with respect to Count 1, how do you

6    wish to plead, guilty or not guilty?

7          *THE DEFENDANT:*  Guilty.

8          *THE COURT:*  Sir, at the end of the Indictment there is

9    an unnumbered forfeiture allegation, and with respect to that,

10   do you admit or deny the forfeiture allegation?

11         *THE DEFENDANT:*  Admit.

12         *THE COURT:*  Okay.  Now, Mr. Snisky before I can accept

13   your plea of guilty, formally, there are a number of things

14   that I have to go over with you, and so I'm going to start with

15   the paperwork that's prepared in this case.  You can put the

16   Indictment to the side for the time being.  Simply pick up the

17   document that's called *Plea Agreement* and *Statement Of Facts*

18   *Relevant To Sentencing.*  Do you have that?

19         *THE DEFENDANT:*  Yes.

20         *THE COURT:*  On page 17 there is a line with -- with a

21   signature.  Is that your signature above the name Gary Snisky?

22         *THE DEFENDANT:*  Yes.

23         *THE COURT:*  And, Mr. Pepin, is that yours, as well?

24         *MR. PEPIN:*  Yes.

25         *THE COURT:*  Ms. Rhyne, is that yours, as well?

1              *MS. RHYNE:*  I did sign page 17.

2              *THE COURT:*  I'm taking it that's a yes?

3              *MS. RHYNE:*  It's a yes, except my copy is not a signed

4      copy.

5              *THE COURT:*  Okay.  Okay.  Mine is.  Okay.

6              Mr. Snisky, did you have an opportunity to read and

7      review this document with Mr. Pepin before you signed it?

8              *THE DEFENDANT:*  Yes.

9              *THE COURT:*  Do you feel you understand it -- what it

10     says?

11             *THE DEFENDANT:*  Yes.

12             *THE COURT:*  Does this document contain every single

13     agreement that you have with the Government?

14             *THE DEFENDANT:*  Yes.

15             *THE COURT:*  And just to be clear, sir, I'm not trying

16     to be tricky here.  What I'm trying to say is, there's no side

17     deal or other piece of paper that exists that has some other

18     provision or deal that's not been revealed to me in this

19     document?

20             *THE DEFENDANT:*  No.

21             *THE COURT:*  All right.  I want to go over the *Plea*

22     *Agreement* with you a little bit.  Understanding that you have

23     already read and understand it.  The first thing I want to do

24     is make sure that we have a common understanding of what the

25     deal, your agreement with the Government is.

1          This is my understanding of that, you have agreed to

2     plead to Counts 2 and 14 and admit the forfeiture allegation.

3     Frankly, you have agreed to pay $200 monetary assessment, but

4     frankly that's something that's required by law, whether you

5     agree to it or not.  You have also agreed that restitution will

6     be applicable in this case in an amount approximately equal to

7     2.5 million dollars, and frankly there's a much more detailed

8     number in the *Plea Agreement*, as well as an explanation that

9     number can be adjusted downward by certain distributions made

10    from amounts forfeited.

11          *THE DEFENDANT:*  Yes.

12          *THE COURT:*  The Government has also agreed that under

13    the guidelines you get three points acceptance of

14    responsibility.  You reserve the right to request a variant

15    sentence, and that's a little bit of legal mumbo-jumbo.  To

16    make sure we are on the same page, what it means is, there are

17    guidelines that we will talk about a little later, but you

18    reserve the right to ask me for a sentence without regard to

19    those guidelines.

20          So you can ask me for a sentence lower than those

21    guidelines.  Frankly, you can ask me for any sentence that the

22    law would allow.

23          *THE DEFENDANT:*  Yes.

24          *THE COURT:*  Understood?

25          *THE DEFENDANT:*  Yes.

1          *THE COURT:*  And you have also agreed to the forfeiture

2     allegation, in not to contest forfeiture in any way in

3     connection with this matter.  Understood?

4          *THE DEFENDANT:*  Yes.

5          *THE COURT:*  Now, with respect to -- there's one other

6     aspect to this that I want to touch on, and that is that there

7     is a waiver of appellate rights in here.  And let me just see

8     if I can make this simple.

9          Persons who are convicted will sometimes want to go to

10    an appellate court, or later come back to the Court that

11    sentenced them, and say something is wrong, maybe it was

12    unconstitutional, it was in violation of law, what have you.

13         In this case, you have agreed that you will not go to

14    the Court of Appeals for the Tenth Circuit, or come back here,

15    after sentencing, claiming any impropriety or

16    unconstitutionality or anything else with respect to a

17    challenge in terms of prosecution, conviction or sentence,

18    unless one of three things happens.

19         In terms of going to the Court of Appeals, you won't

20    go to the Court of Appeals unless I sentenced you higher than

21    the maximum sentence allowed by law, or I determined the

22    guideline range and sentenced you higher than the guidelines

23    call for, or I determined that the offense level, which is one

24    part of this guideline, is greater than 30, and that I

25    sentenced you in some way based on that calculation.

1        Unless one of those three things happens, you have

2   agreed that you will not go to the Court of Appeals.

3   Understood?

4        THE DEFENDANT:  Yes.

5        THE COURT:  And in terms of coming back here, it's a

6   simpler agreement.  You won't come back here, seek to attack

7   the prosecution, conviction or sentence, unless there is some

8   explicitly retroactive change in these guidelines that we have

9   been talking about that works to your benefit or there's a

10  claim that you were denied effective assistance of counsel or

11  there's some claim of prosecutorial misconduct.  Understood?

12       THE DEFENDANT:  Yes.

13       THE COURT:  Now, I believe that I have just described

14  the totality of the deal that you have with the United States,

15  am -- is my understanding correct?

16       MR. PEPIN:  Yes.

17       THE COURT:  Do you agree, Ms. Rhyne?

18       MS. RHYNE:  No, Your Honor.  I think that the Court

19  inadvertently left out the component of paragraph four, which

20  says Mr. Snisky agrees to not contest the sentencing factors

21  set forth in the Plea Agreement.

22       MR. PEPIN:  That is in there, Your Honor.

23       THE COURT:  Well, okay.  I mean, frankly, here is the

24  way I look at this, it says *He agrees not to contest the*

25  *sentencing factors and therefore you will agree to give a*

1     *one-level reduction -- you recommend an additional third point*

2     *for acceptance of responsibility in exchange for that.*  So in

3     terms of the raw guideline calculations, you have agreed not to

4     dispute the calculations that are in here, even though they are

5     not binding on me?

6           *THE DEFENDANT:*  Yes.

7           *THE COURT:*  All right.

8           *THE COURT:*  Do you now agree that I have fully covered

9     the *Plea Agreement.*

10          *MS. RHYNE:*  I do.  Thank you.

11          *THE COURT:*  Do you agree, Mr. Pepin?

12          *MR. PEPIN:*  Yes.

13          *THE COURT:*  And, Mr. Snisky, do you, as well?

14          *THE DEFENDANT:*  Yes.

15          *THE COURT:*  All right.  You need to understand a

16     couple of things, the first is that although there are all of

17     these agreements that are talked about in here, I'm not part of

18     the agreement; meaning, nothing in here binds me.  I have to

19     sentence you in accordance with the law.  Not -- not by virtue

20     of whatever agreement you have with the Government.

21     Understood?

22          *THE DEFENDANT:*  Yes.

23          *THE COURT:*  Ultimately, I make up my own mind as to

24     what's the appropriate sentence.  Understood?

25          *THE DEFENDANT:*  Yes.

1          THE COURT:  I also have to tell you about the

2     maximums, and I do that not because I have given any thought,

3     whatsoever, to the penalty -- to the sentence in this case.  I

4     haven't.  But what happens is, whenever anyone pleads guilty,

5     they are exposed to the maximum that the law allows.  So in

6     order to make sure that you understand, if you will, the risk,

7     I have to advise you of the maximums.  Understood?

8          THE DEFENDANT:  Yes.

9          THE COURT:  In this case the maximum statutory penalty

10    for one of the counts; that is, the *Mail Fraud Count*, is not

11    more than 20-years imprisonment, fine of not more than $250,000

12    or twice the gain or loss resulting from the offense or both

13    fine and imprisonment.  Not more than three-years supervised

14    release, a $100 special assessment fee, plus restitution in an

15    amount that we discussed earlier.  Understood?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Now, with respect to the second count,

18    Count -- the *Monetary Transaction* count, Count 14, that has a

19    different maximum penalty.  That penalty is not more than

20    ten-years imprisonment, a fine of not greater than $250,000 or

21    twice the amount of criminally derived property or both, three

22    years supervised release, restitution and a $100 special

23    assessment fee.  Understood?

24         THE DEFENDANT:  Yes.

25         THE COURT:  So because there's two counts, you have to

put the penalties together, and so in terms of the total case,

the total maximum penalty for both counts is not more than 30

years imprisonment, a fine of not more than $500,000 or twice

the gain or loss from the offense or both, not more than three

years supervised release, a $200 special assessment fee and, of

course, the restitution doesn't double, that stays the same.

You understand that?

      *THE DEFENDANT:*  Yes.

      *THE COURT:*  And the supervised doesn't double either,

because all terms of supervised release have to run together.

Understood?

      *THE DEFENDANT:*  Yes.

      *THE COURT:*  All right, sir.  Do you understand that if

there -- if you are currently subject or at the time of

sentencing are subject to any additional sentence, I can impose

a sentence here that runs together with it or I could choose to

make it follow or stack on that other sentence.  You understand

that?

      *THE DEFENDANT:*  Yes.

      *THE COURT:*  My understanding is you are on bond,

there's no reason to believe that you are subject to another

sentence, but I'm just simply advising you, because I don't

know the future anymore than you do.  Understood?

      *THE DEFENDANT:*  Yes.

      *THE COURT:*  You understand that there's no parole in

1   the federal system, and what that means if I sentence you to a

2   term of imprisonment, there's no early out.  You have to do all

3   of the time that you are given, with the exception of a certain

4   limited number of days per year that the bureau of prisons can

5   credit you with for good-time behavior.

6           THE DEFENDANT:  Yes.

7           THE COURT:  You understand that these two counts that

8   we're talking about, Counts 2 and 14, are felonies?

9           THE DEFENDANT:  Yes.

10          THE COURT:  And there are collateral consequences to

11  pleading guilty or being convicted of a felony, including it

12  may affect the right to vote, sit on a jury, possess firearms,

13  hold jobs in the public or private sector, affect your

14  eligibility for government housing or -- programs, and that all

15  of that is beyond anything that I have to do with?

16          THE DEFENDANT:  Yes.

17          THE COURT:  There's a section of this *Plea Agreement*

18  that's called the *Stipulation Of Facts*.  It begins on page

19  seven, and continues through quite a number of pages, through

20  page 13, I believe.  You see that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Now, I'm not going to read that to you,

23  word for word today, because frankly, again, my understanding

24  is you're a fully educated individual who has read this and

25  reviewed it with Mr. Pepin.  Is my understanding correct?

1          *THE DEFENDANT:*  Yes.

2          *THE COURT:*  Do you -- do you know what this section

3     says?

4          *THE DEFENDANT:*  Yes.

5          *THE COURT:*  Do you have any questions of me about what

6     this section says?

7          *THE DEFENDANT:*  No, Your Honor.

8          *THE COURT:*  All right.  Is it true?  In other words,

9     is that what happened?

10         *THE DEFENDANT:*  Yes.

11         *THE COURT:*  There's a section in the *Plea Agreement*

12    that discusses the guidelines.  We've talked about those a

13    little bit.  I want to talk with you a little bit more about

14    them.

15              Essentially, guidelines -- well, there's a group

16    called The Sentencing Commission, and what they do is they

17    submit recommendations as to sentencings in all federal cases

18    through this book called the guidelines, and basically it just

19    adds points or takes away points, depending upon the presence

20    or absence of certain facts.  Understood?

21         *THE DEFENDANT:*  Yes.

22         *THE COURT:*  Now, this section of the *Plea Agreement*,

23    is the attempt by your lawyer and Ms. Rhyne to apply the

24    guidelines in this case and come up with the recommended

25    sentence that the guideline manual suggests.  Understood?

1           *THE DEFENDANT:*  Yes.

2           *THE COURT:*  Now, what's important for you to

3    understand about this is this is only the lawyers' estimate of

4    what the guideline is.  I can at sentencing conclude that you

5    both have done it wrong and come up with a different guideline

6    calculation.  Understood?

7           *THE DEFENDANT:*  Yes.

8           *THE COURT:*  Regardless of whether I agree with the

9    calculation in the documents or come up with my own, the fact

10   is I don't have to go along with the guidelines.  I have to

11   consider them, but once I have done that, I'm not bound by the

12   sentence that the guideline manual recommends.  Understood?

13          *THE DEFENDANT:*  Yes.

14          *THE COURT:*  And that's where your reservation of the

15   right to ask for what's called a variance comes into play.  You

16   can ask me for a lesser sentence, regardless of what the

17   guideline says.  Understood?

18          *THE DEFENDANT:*  Yes.

19          *THE COURT:*  Most importantly, if, for some reason, I

20   sentence you differently than what this document calls for, the

21   *Plea Agreement*, or even what the guidelines call for, you can't

22   withdraw your plea of guilty on that basis.  Understood?

23          *THE DEFENDANT:*  Yes, sir.  Yes, Your Honor.

24          *THE COURT:*  All right.  Now, what that means, at the

25   end of the day, is that you shouldn't plead guilty based on

1    some belief that I will necessarily sentence you in accordance

2    with any recommendation in here or any recommendation in the

3    guidelines.  Understood?

4              THE DEFENDANT:  Yes.

5              THE COURT:  If anyone has told you what they think I

6    will do at sentencing, you can't rely on that either.  Do you

7    understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And let's turn to the second document, the

10   *Statement By The Defendant In Advance Of Plea Of Guilty*.  I ask

11   you to turn to the last page of that document, and tell me

12   whether that is your name that appears on page nine?

13             THE DEFENDANT:  Yes.

14             THE COURT:  And, Mr. Pepin, is that yours, as well?

15             MR. PEPIN:  It is.

16             THE COURT:  Mr. Snisky, did you have an opportunity to

17   review and discuss this document with Mr. Pepin, before you

18   signed it?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Do you feel you understand what it says?

21             THE DEFENDANT:  Yes.

22             THE COURT:  It should be obvious to you by now that

23   what's going on here is that you have a decision to make here

24   today.  A person can plead guilty or go to trial, but you can't

25   do both on any charge or charges.  Understood?

1        *THE DEFENDANT:*  Yes.

2        *THE COURT:*  Now, choosing to plead guilty means giving

3   up the right to go to trial.  Do you understand that?

4        *THE DEFENDANT:*  Yes.

5        *THE COURT:*  Much of this document is a discussion of

6   what happens at a trial and your rights if you were to choose

7   to go to trial.  In other words, these are the rights that you

8   would be giving up by choosing to plead guilty.  Understood?

9        *THE DEFENDANT:*  Yes.

10       *THE COURT:*  I want to review some of these with you in

11  my own words.  You have the right not only to a trial but to a

12  trial by a jury.  Understood?

13       *THE DEFENDANT:*  Yes.

14       *THE COURT:*  A jury isn't some group that works for the

15  Government.  They are people from the community that are

16  brought into the courtroom and 12 them are selected for the

17  jury in an individual case.

18           The important point is you and Mr. Pepin, through

19  questions and other procedures, have some input into who would

20  serve on the jury, if this case went to trial.  Understood?

21       *THE DEFENDANT:*  Yes.

22       *THE COURT:*  You understand that the jury would be the

23  ones who would decide whether or not you were guilty, not me?

24       *THE DEFENDANT:*  Yes.

25       *THE COURT:*  Now, I would tell the jury and they would

1   have to base their decision only on the evidence that was

2   presented during the course of the trial.  Do you understand

3   this?

4           *THE DEFENDANT:*  Yes.

5           *THE COURT:*  They cannot find you guilty unless each

6   and every single one of them agreed that the evidence showed

7   you to be guilty beyond a reasonable doubt.  Understood?

8           *THE DEFENDANT:*  Yes.

9           *THE COURT:*  At this trial you are not required to

10  prove that you are not guilty.  In fact, you are not required

11  to prove or disprove anything.  The Government is required to

12  prove guilt beyond a reasonable doubt.  If the Government

13  failed to do so, then the jury must find you not guilty.

14  Understood?

15          *THE DEFENDANT:*  Yes.

16          *THE COURT:*  Let's go back for a moment to Exhibit --

17  to Court Exhibit 1, the *Plea Agreement*, and I would ask that

18  you turn to page five.  On page five, and continuing on to page

19  six, there is a recitation of the elements of the offense for

20  Count 2, and then a separate recitation for the elements of the

21  offense for Count 14.  Do you see that?

22          *THE DEFENDANT:*  Yes.

23          *THE COURT:*  And you reviewed that with Mr. Pepin,

24  didn't you?

25          *THE DEFENDANT:*  Yes.

1          THE COURT:  All that I want to make sure that you

2    understand is that these are the things that the Government

3    would have to prove at trial, beyond a reasonable doubt, before

4    you can be found guilty.  Understood?

5          THE DEFENDANT:  Yes.

6          THE COURT:  At trial, you, of course, would have the

7    right to the assistance of an attorney, Mr. Pepin.  You

8    understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  And you get to be here, as well; meaning,

11    the trial happens with you here in the courtroom, in front of

12    you, so you can see the witnesses, hear what they have to say,

13    see the exhibits and understand what the Government's case is,

14    as it's presented to the jury.  Understood?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Mr. Pepin would have the right to

17    Cross-examine or question witnesses who testify against you.

18    You understand this?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And you could present witnesses at trial,

21    as well, if that's what you wished to do.  Understood?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Even though you have no obligation to do

24    so.  Understood?

25          THE DEFENDANT:  Yes.

1          THE COURT:  In other words, you have an opportunity to

2    tell your side of the story at -- at the course of the trial,

3    and it's not simply a one-way street where only the Government

4    gets to present evidence.  Understood?

5          THE DEFENDANT:  Yes.

6          THE COURT:  At this trial, if you are unable to pay

7    for the costs of a defense, whether that be attorney fees or

8    expert fees or some other fee or expense, all of that would be

9    paid for you and should not be a consideration, in any way.

10   Understood?

11         THE DEFENDANT:  Yes.

12         THE COURT:  At trial, you have a special right, unlike

13   any other witness at trial, no one can make you testify.  If

14   you want to, you can; and no one can stop you, but if you don't

15   want to, no one can make you either.  Nor can anyone comment

16   upon it.  Understood?

17         THE DEFENDANT:  Yes.

18         THE COURT:  In fact, if you were to -- and you

19   wouldn't have to decide today whether you would testify at a

20   trial.  You don't have to make the decision until during the

21   course of the trial, after the Government has put on all of its

22   evidence, laid their cards on the table, so to speak, and you

23   have seen it, then you would have to decide whether you were

24   going to testify or not.  Understood?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Now, if for any reason you were to decide

2     that you did not want to testify, I would tell the jury they

3     can't consider that in any way.  Understood?

4          THE DEFENDANT:  Yes.

5          THE COURT:  They can't even think about it on the

6     issue of guilt or draw any inference at all from that fact.

7     Agreed?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Well, I shouldn't say agreed, because

10    it's -- that's the law.  You understand that, right?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Now, if you go to trial and you are

13    convicted, you will have the right to appeal the conviction as

14    well as any sentence that might be imposed on behalf -- imposed

15    by me.  There may be someone who would want to impose something

16    on me, but in this case I'm talking about imposed by me, after

17    that conviction.  Do you understand?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Again, if you couldn't afford an appeal,

20    any and all costs associated with that would be paid for by the

21    Government, including any costs associated with attorney

22    representation.  Do you understand that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Now, if you plead guilty and go to

25    trial -- excuse me.  If you plead guilty, this trial never

1    happens.  There's no trial, because by pleading guilty what you

2    do is you waive or you give up the right to go to trial, as

3    well as all of the other rights that are associated with it.

4    Those that I have talked to you about.  Those that are included

5    in this document.  You understand?

6             THE DEFENDANT:  Yes.

7             THE COURT:  And there's no right to appeal the issue

8    of guilt if you plead guilty, at all, because you will have

9    admitted guilt by pleading guilty.  Do you understand?

10             THE DEFENDANT:  Yes.

11             THE COURT:  And of course, in this case there's a

12   further restriction by virtue of your *Plea Agreement* with the

13   Government, in terms of your right to appeal that we've talked

14   about earlier.  Understood?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Now, is there anything at all about a

17   trial that you do not understand or want to ask me about?

18             THE DEFENDANT:  No.

19             THE COURT:  All right.  Mr. Snisky, in a very simple

20   way, choosing to go to trial is turning to the Government and

21   saying about its charges, prove it, beyond a reasonable doubt,

22   and pleading guilty is saying something very different.  It's

23   saying, you don't have to prove it, because I admit it.

24   Understood?

25             THE DEFENDANT:  Yes.

1          THE COURT:  Sir, I have now reviewed with you those

2     things that I feel I need to.  Have you understood all of the

3     things that we've talked about?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Is there anything, at all, that you did

6     not understand?

7          THE DEFENDANT:  No.

8          THE COURT:  Is there anything, at all, that you want

9     to ask me?

10          THE DEFENDANT:  No.

11          THE COURT:  Is there anything, at all, that you want

12     to speak with Mr. Pepin about, privately, before we conclude?

13          THE DEFENDANT:  No.

14          THE COURT:  Then we are at the end of this hearing,

15     and sir, this will be your last chance to change your mind, so

16     to speak.  I ask you one last time, Mr. Snisky, do you still

17     wish to plead guilty to each of the Counts, 2 and 14, and admit

18     the forfeiture allegation contained in the Indictment?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Are you pleading guilty of your own free

21     will?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Are you, in fact, guilty?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Mr. Pepin, do you know of any reason why I

1   should not permit Mr. Snisky to plead guilty?

2              *MR. PEPIN:*  No, sir.

3              *THE COURT:*  Ms. Rhyne, do you?

4              *MS. RHYNE:*  No, Your Honor.

5              *THE COURT:*  Exhibits 1 and 2 are admitted for purposes

6   of this hearing.  Based on the *Plea Agreement* the *Statement By*

7   *The Defendant In Advance Of Plea Of Guilty*, my observations of

8   Mr. Snisky, statements of counsel and the record developed here

9   today, it is the finding of the Court, in the case of the

10  United States versus Gary Snisky, that the defendant is fully

11  competent and capable of entering an informed plea; that he is

12  aware of the nature of the charges and the consequences of the

13  plea; that he has had the benefit of competent counsel; and

14  that the plea of guilty is a knowing and voluntary plea

15  supported by independent basis in fact containing each of the

16  essential elements of the offense.  The plea of guilty is

17  therefore accepted, and the defendant is now adjudged guilty of

18  that offense.

19         Further, I find and conclude that the information

20  contained in that portion of the *Plea Agreement* entitled

21  *Stipulation Of Facts* enables me to meaningfully consider

22  offense behavior for sentencing purposes, while being most

23  protective of the Sixth Amendment Rights of the defendant.  I

24  therefore order that the probation department not conduct an

25  independent factual investigation of the offense conduct in

1   this matter.  I defer acceptance of the *Plea Agreement* until

2   the sentencing hearing.

3         I was originally planning on an April 30 date.  My

4   understanding is that there may be some difficulty with that,

5   so rather than set a date now, what I will do is, Mr. Pepin, I

6   will ask you and Ms. Rhyne some time on Monday, to simply call

7   chambers and arrange with Deanne a date where you are both

8   available some time after April 30.

9         *MS. RHYNE:*  Your Honor, we're actually -- we have a

10  bit of a disagreement there.  Mr. Pepin, I don't believe,

11  necessarily has a conflict specifically with April 30th.  He is

12  just hoping for more than the usual amount of time, and the

13  Government disagrees that that's necessary or appropriate.

14        *THE COURT:*  Well, let me put it this way, I understand

15  what your position is, and I don't go along with it.  I'm going

16  to allow Mr. Pepin to put on what he wants to put on by way of

17  sentencing, assuming, of course, that it's relevant.

18        *MS. RHYNE:*  I apologize, I was not clear.  He wants

19  Mr. Snisky's sentencing to happen after his daughter's

20  confirmation.  I don't believe that's an appropriate

21  consideration for the timing.

22        *THE COURT:*  When is his daughter's confirmation?

23        *MR. PEPIN:*  I will lay it out a little further,

24  Your Honor.  His daughter -- and I believe it's First

25  Communion.  His daughter's First Communion is scheduled for May

1    3rd.  That's only a couple of days later than April 30th, and

2    so that may not be a problem.  The bigger, beyond that,

3    though --

4          THE COURT:  That's not a problem.  So let's just move

5    past that.

6          MR. PEPIN:  All right.  Well so, um, if Mr. Snisky is

7    given a prison sentence, and we think that it's highly likely

8    in light of a variety of circumstances, his wife and daughters

9    will need to move back to where Mrs. Snisky's family lives in

10   New York.  The daughters will be in school until June 5th.

11   They have been where they have been to school much of their

12   lives.  And so what I am going to ask the Court to do is

13   schedule a sentencing approximately two weeks after June 5th.

14   So that he can get them back there to New York, get them

15   planted, and then come back and face sentencing and whatever

16   happens then.

17         THE COURT:  I am not familiar with the terms of his

18   bond.

19         MR. PEPIN:  We would have to ask permission for him to

20   go back and we would do that.  He is restricted to the State of

21   Colorado.  Take whatever steps are necessary in terms of that

22   request.  But that's -- that's the nature of our request and

23   the basis for it.

24         THE COURT:  I don't know whether Deanne is still back

25   there.  I suspect that she is not.  What I will tell you is

1   that I understand the Government's concern.  I don't think the

2   timeline is so -- so vastly different that, you know, it's

3   going to be -- it was going to be some time in May to make it

4   mid-June is not that big of a deal.  I don't have a problem

5   with it.  Set -- set it for mid June.

6          *THE DEFENDANT:*  Thank you, Your Honor.

7          *MR. PEPIN:*  Thank you, Your Honor.

8          *MR. PEPIN:*  We will contact Ms. Bader in the morning.

9          *THE COURT:*  You can do it tomorrow or Monday, but by

10  the end of the day Monday for sure.  And certainly I will talk

11  to her in the morning and let her know that both of you will be

12  calling.

13          She is there and she has told me that *or you can both*

14  *come back right after this hearing*, and she will give you a

15  date at that point in time.

16          So, Mr. Snisky, look, between now and whenever the

17  sentencing is, you will be contacted by the probation

18  department, and what their job is, is to interview you, prepare

19  a report, called a *Presentence Investigation Report*, which I

20  will consider as a part of my sentencing decision.

21          I encourage you to cooperate with them.  Mr. Pepin can

22  be present during that interview.  When that report is done,

23  both you and he will obviously have an opportunity to review

24  it, and you can make suggestion -- suggested changes or

25  corrections, additions.  Both you and he will also have an

1    opportunity to speak directly to me at sentencing.

2           Let me be clear about one thing, you are on bond and

3    bond is continued.  Although I'm setting the timing for

4    mid-June, I have not ruled on any motion for permission, at

5    this juncture, and let me be very clear that if there is some

6    hiccup between now and then, don't expect that it is a given

7    that I will say you can go with them.  It may be that the time

8    is extended so that they can go, but your behavior on bond,

9    between now and then, will impact what my response is to any

10   motion to permit you to assist them in that -- in that

11   movement.  Understood?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  All right.  Bond is therefore continued.

14   Is there anything further on behalf of the Government?

15          MS. RHYNE:  No, Your Honor.  Thank you.

16          MR. PEPIN:  No.  Thank you, Your Honor.

17          THE COURT:  All right.  We will be in recess.

18       (Recess at 5:23 p.m.)

19                    REPORTER'S CERTIFICATE

20

21       I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.
22

23       Dated at Denver, Colorado, this 3rd day of September,

24   2015.

25                    s/Tammy Hoffschildt

1

2        _____
         Tammy Hoffschildt, FCRR RMR,CRR

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25