IN THE UNITED STATES DISTRICT

FOR THE DISTRICT OF COLORADO

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**MAY -6 2016**

**JEFFREY P. COLWELL**
**CLERK**

UNITED STATES OF AMERICA,

      Respondent,

                                       Criminal No. 13-cr-00473-RM

v.                                    Civil No. _____

GARY SNISKY

      Petitioner.

PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO VACATE, SET ASIDE OR CORRECT CONVICTION
AND SENTENCE PURSUANT TO 28 U.S.C. §2255

Petitioner Gary Snisky ("Snisky" or "Petitioner"), defendant in this criminal matter, acting Pro-Se, respectfully moves for an order of this Court to vacate, set aside or correct his conviction and sentence pursuant to 28 U.S.C. §2255. Such conviction and sentence was the result of Ineffective Assistance Of Counsel, Robert Pepin, Esq., as such that the Petitioner's Constitutional Rights under the Sixth Amendment to the United States Constitution were violated in the Plea Agreement and at Sentencing.

   I, Gary Snisky, am the Petitioner in this Motion to Vacate, Set Aside Or Correct the sentence imposed by the Court in this case. I make this Motion Pro Se and respectfully request appointment of counsel pursuant to U.S.C. §3006A (a)(2)(b).

1

I.                                  BACKGROUND

In November of 2013, in the United States District Court for the District of Colorado, the Grand Jury Handed up a true indictment charging Snisky with eight-teen (18) counts of mail fraud and engaging in monetary transactions in property derived from mail fraud.

On November 21, 2013, Snisky was arrested and on November 22, 2013, Snisky appeared in Federal Court and requested counsel be appointed. On Tuesday November 26, 2013, Snisky met with a Federal Public Defender for Colorado who represented him at the arraignment and bail hearing. Bail was set at twenty five (25) thousand dollars, which was paid by a relative the following week, as the delay was due to the Thanksgiving Holiday. Snisky was released from prison on or about December 3, 2013.

On February 5, 2015, Snisky appeared before the Honorable Judge Raymond Moore and plead guilty to Count 2, mail fraud in violation of 18 U.S.C. §1341, and Count 14 engaging in monetary transactions in property derived from mail fraud in violation of 18 U.S.C. §1957, on the advice of Defense Counsel, Robert Pepin, ("Pepin"). Pepin stated he would subsequently make the appropriate objections and present the appropriate mitigating evidence prior to the Sentencing Hearing, as to lesson the sentence. Snisky further agreed to admit to the asset forfeiture allegations in the indictment on advice of counsel.

Based on Pepin's assurances, advice, and expertise, Snisky agreed to a Plea Agreement waiving his right to appeal or collateral attack under 18 U.S.C. §3742 and 28 U.S.C. §2255. The Plea Agreement contains a waiver provision relating to the right to appeal, challenge and/or collaterally attack the prosecution, conviction or sentence (Plea Agreement, Page 3, ¶6). However, that paragraph clearly provides that the waiver provision will not prevent Snisky from seeking relief otherwise available when there is a claim of denial of effective assistance of counsel.

2

On June 18, 2015, the Honorable Judge Moore sentenced Snisky to two eighty-four month terms running concurrently, one count of mail fraud and one count of engaging in monetary transactions in property derived from mail fraud. However, both the February 5, 2015 plea, and the harshness of the June 18, 2015 sentence were the result of the ineffective assistance of counsel, and Pepin's lack of effort to argue the issues of the case, as well as, introducing significant evidence while negotiating the Plea Agreement.

Were it not for Mr. Pepin's ineffective assistance of counsel, Snisky would not have: (i) plead guilty, (ii) entered into an unfavorable Plea Agreement, (iii) sentenced to eighty-four (84) months, (iv) and ordered to pay over $2.5 million in restitution.

II.                     STATEMENT OF THE ISSUES

The issues presented for consideration in a motion under 28 U.S.C. §2255 is whether Defense Counsel, Robert Pepin, Esq., was ineffective throughout his representation of Petitioner in this proceeding, including at the plea negotiation stage and sentencing hearing.

1. It is Petitioner's contention that Pepin neglected to challenge the United States Guidelines provisions determining the actual loss against the Government assessing an 18-Level enhancement under U.S.S.G. §2B 1.1 (b)(1)(J).

2. The Petitioner contends that Pepin failed to argue that the Petitioner did not engage with ten (10) or more victims under §2B 1.1 (b)(2)(a)(i) when applying an additional 2-Level enhancement.

3. It is Petitioner's contention that Pepin neglected to argue the 2-Level enhancement for Sophisticated Means under U.S.S.G. §2B 1.1 (b)(10).

4. The Petitioner contends that Pepin neglected to challenge, argue, and provide mitigating evidence to reveal that Petitioner was not the "Organizer or Leader," resulting in an additional 4-Level enhancement pursuant to Section §3B 1.1 (a).

3

III. <u>RULE OF LAW</u>

The Plea Agreement contains a waiver provision relating to the right to appeal, challenge and/or collaterally attack the prosecution, conviction or sentence (Plea Agreement, P.3, ¶6). However, that paragraph clearly provides that the waiver provision will not prevent the Petitioner from seeking relief otherwise available when "there is a claim that the Defendant was denied the effective assistance of counsel, or there is a claim of prosecutorial misconduct," (Plea Agreement, P.3, ¶6).

A plea waiver and collateral attack waiver generally are not enforceable when it is claimed that the agreement was entered into with ineffective assistance of counsel, <u>U.S. v Cockerham</u>, 237 F.3d 1179, 1182-4 (10th Cir. 2001). Furthermore, the Court should strictly construe any ambiguity in waiver provisions of such agreements against the Government and is in favor of the Defendant, <u>U.S. v Hahn</u>, 359 F.3d 1315, 1325 (10th Cir. 2004). A waiver is "otherwise unlawful," when it "Seriously affect[s] the fairness, integrity or public reputation of Judicial proceedings," (quoting <u>U.S. v Olano</u>, 507 U.S. 725, 732, 113 Supreme Court 1770, L. Ed.2d 508, 1993).

An ineffective assistance of counsel claim should be brought up in a collateral proceeding and not direct appeal; <u>U.S. v Sigman</u>, 601 Fed. App. 762 (10th Cir. 2015); <u>U.S. v Galloway</u>, 56 F.3d 1239, 1240 (10th Cir. 1995). See also <u>U.S. v Cronic</u>, 466 U.S. 648 (U.S. 1984), where the Supreme Court explained that "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing" was grounds for ineffective assistance of legal counsel.

The Sixth Amendment provises that, "[i]n all criminal prosecutions, the accused shall enjoy the right...to have the Assistance of Counsel for his defense," U.S. Const. Amend. VI. The Supreme Court has long recognized that the right to counsel includes "the right to the effective assistance of counsel." Enjoyment to assistance of counsel would be meaningless if the assistance

4

counsel provides is ineffective; McMann v Richardson, 397 U.S. 759 (1970); Cuyler v Sullivan, 466 U.S. 335, 343 (1980). A criminal defendant also enjoys a constitutional right to effective assistance of counsel in the plea bargaining stage, see U.S. v Day, 969 F.2d 39 (3rd Cir. 1982). The United States Supreme Court has re-affirmed this long standing principle in two landmark decisions, see Missouri v Frye, 132 S.Ct. 1399, 1407 (2012), and Lafler v Cooper, 132 S.Ct. 1376 (2012). "[T]he reality [is] that criminal justice today is for the most part a system of pleas and not a system of trials." The constitutional guarantee of effective assistance of counsel extends to plea negotiations, Hill v Lockart, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L. Ed.2d (1985). The importance of counsel's role at this stage cannot be understated because, as the Supreme Court has noted, the plea bargaining process is a critical stage of the criminal process.

Therefore, where counsel's assistance falls below an objective standard of reasonableness and prejudices the defense, counsel is ineffective and the defendant is entitled to relief from the prejudice, Strickland v Washington, 466 U.S. 688 (1984). To prevail on a showing that the Sixth Amendment was violated because of ineffective assistance of counsel, a defendant must show (1) "couunsel's performance was deficient," requiring "that counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 678-688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms"). Pepin failed to provide the Court with simple documentary evidence that was exculpatory, such as a copy of the Operating Agreement of Arete, LLC, signed by Co-Founders and Managing Partners Mr. Richard Greeott and Mr. Gary Snisky (Exhibit 1A). Acts and omissions that fall "outside the wide range of professionally competent assistance" satisfy this first prong of Strickland.

The second prong (2) requires that the deficient performance prejudiced the defendant such that there is a reasonable probability that the outcome was a direct result of Defense Counsel, Pepin's, ineffective assistance as legal counsel, Strickland 466 U.S. at 694.

In this regard, the possibility of an increased prison sentence flowing from counsel's errors constitutes the prejudice that satisfies Strickland's second prong. See also Glover v U.S., 531 U.S. 198 (2001). Pepin's failure to present mitigating evidence to substantiate the factual predicate which the Government was relying upon exposed the Petitioner to an additional seventy-eight months in prison as compared to Petitioner's Partner, Mr. Greeott, who received a six month sentence. This constitutes prejudice triggering, Strickland relief and satisfies the second prong.

IV.                          SUMMARY OF EXHIBITS

The detailed facts are presented in the accompanying Exhibit(s) of Petitioner submitting herewith (Exhibits A-C), as well as the Plea Agreement of February 5th, 2015 ("PA"), and the Sentencing Hearing on June 18th, 2015 ("Tr").

V.                           GROUNDS FOR RELIEF

1. ATTORNEY PEPIN ENGAGED IN CONSTITUTIONALLY DEFICIENT PERFORMANCE WHEN HE FAILED TO CHALLENGE AND/OR COMPETENTLY CHALLENGE THE LOSS COMPUTATION.

Defense Counsel Pepin failed to challenge the advisory guideline calculation to Petitioner's actual prejudice. Actual loss was incorrectly calculated by the prosecution and Pepin refused the Petitioner's requests to challenge the Government's loss calculation. Pepin advised Petitioner that challenging the Government would cause the Government to withdraw its 3-Level downward adjustment for Acceptance Of Responsibility. This ineffective counsel was the sole reason for the 18-Level enhancement which should have been only a 12-Level enhancement.

The Petitioner and his partner Mr. Greeott, owned Arete LLC equally and for the purpose of investing funds for Cornerstone Marketing Group LLC ("CMG"), on behalf of it's clients, as directed by CMG's President, David Sorrells. The Government first states on page 13 of the Plea Agreement February 5, 2015 "the loss for which he will be held accountable for" is $5,226,965.93, when in fact, the Government secondly identifies the "investor money" on page 12 of the Plea Agreement totaling "a net approximately of $4,180,540.81." Pepin refused Petitioner's requests to challenge this significant factual difference. Prior to the writing of the Plea Agreement the Government claims it recovered an approximate value of $2,695,914.32 (total loss $5,226,965.93, PA P.13, less the accountable loss $2,531,052.61, PA P.16, or Recovered Funds). Given these Government Recovered Funds prior to the Plea Agreement, compared to the additional funds recovered or not applied after the February 2015 Plea Agreement, including (i) from the sale of real property owned by Cuil LLC, totaling $550,000 (USSG Section 2B 1.1 E. Credits Against Loss (i)(ii)), (ii) Government and SEC recovered money from Zeek Rewards totaling $423,000 (see SEC v Rex Venture Group, No. 3:12-cr-519, 5th Cir.), (iii) and $45,000 repaid by Dawn Rassmussen (Tr P.63, L.19-24), all three facts totaling the sum of $1,008,000 and equalling a total recovery of some $3,703,914.32. When deducted from the Actual Value of $4,180,540.81 ("investor money") this lessons the level of offense from a level 25 to a level 19 and the loss to $476,626.29. Pepin never challenged any of the above facts and a full accounting of same will perhaps reveal an even larger recovery of funds and a level enhancement below 19.

Moreover, with the U.S. Sentencing Commissions November 1, 2015 Amendment increasing loss calculation levels by 134%, the Actual U.S. Intended Loss would be reduced below level 19 to a level 17 ($400,000 * 134% = $536,000) with a collective reduction of 8 levels on this single issue alone.

7

Further, the Defendant's intended loss was "that the defendant purposely sought to inflict" according to the USSG. Paying commissions to CMG per CMG's terms, investing in real estate, investing Zeek Rewards per CMG's request, are not funds intended for loss.

Petitioner maintains his due process right to reasonably contest errors that affect his sentence and he should not be punished for it, U.S. v Castillo, 779 F.3d 318 (5th Cir. 2/26/15). Petitioner contends that the Government overstated the Actual Loss Amount. "The purpose of restitution is essentially compensatory; a restitution order had to be tied to the victims actual, provable, loss" U.S. v Browne, (Cean) 2d Cir. 2015. The Government's loss figures are all an approximate value not an actual value (PA P.2 ¶3, P.3 ¶7, P.6 ¶12, P.12, P.16 ¶N). The Plea Agreement states "...additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement," PA P.7, ¶15. Therefore, Petitioner defends his right to challenge the Government's Actual Loss Amount as a factual finding, "as all stipulation of facts are identified as in dispute," (PA P.7, ¶15), especially approximate dollar values. "[N]o legitimate argument can be made for why contesting the loss amount at a sentencing hearing is distinguishable from a failure to waive the right to appeal," U.S. v Castillo, No. 13-11007. Logic would dictate, that the Petitioner did not know the Actual Loss Amount, then the Plea Agreement is signed unknowingly to factual finding(s). The Defendant must be afforded the opportunity to provide mitigating evidence to support a downward departure, including the facts challenging the Loss Amount.

The Court allowed the Government to revisit the factors of the case to attempt to cause an upward departure, then the Court must provide the same opportunity to the defendant. Pepin made no such attempt, thus prejudice ensued.

8

2. PETITIONER'S SENTENCE MUST BE VACATED BECAUSE IT WAS SUBSTANTIALLY UNREASONABLE GIVEN THE SIGNIFICANT DISPARITY BETWEEN THE SENTENCE IMPOSED ON PETITIONER'S CO-DEFENDANT, WHO PLEADED GUILTY, BUT YET RECEIVED A SIGNIFICANTLY LIGHTER SENTENCE THAN PETITIONER.

Among the factors a sentencing court must consider pursuant to Section 3553(a) is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. §3553(a)(6).

Based on the contrast of the sentence imposed upon Mr. Greeott and Mr. Snisky, the District Court committed plain error because Petitioner's sentence created an unwarranted disparity between sentences imposed upon him and his co-defendant. Although the United States Sentencing Guideline ranges are no longer mandatory, both the United States Supreme Court and the 10th Circuit have clarified that, while the guidelines are one of several factors enumerated in 18 U.S. §3553(a), they are entitled to considerable deference. A reasonable sentence is one that also avoids unwarranted sentence disparities among defendants with similar records of similar conduct §3553(a)(6), U.S. v Rodella, February 5, 2015.

Holding that a sentence is procedurally reasonable "if the District Court committed no significant procedural error, such as failing to calculate (or improperly calculating) the guideline range, treating the guidelines as mandatory, failing to consider the §3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence," U.S. v Nolf, 30 F.Supp.3d 1200, 2014 WL3377695, at 20-21. This Honorable COurt clearly stated "...the need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct" (Tr P.33, L.23-25). The Court continued "...I can make a fair determination of the extent to which I am dealing with individuals who have been

9

found guilty of similar conduct, because they're -- they are both charged in this crime" (Tr P.34, L.5-19). The Court asked for information necessary to prove the depth of the relationship between Mr. Greeott and Mr. Snisky, "You understand the distinction I am trying to draw...I am asking you to give me your interpretation or impressions in that regard" (Tr P.34, L.13-19). Pepin should have immediately provided the Court with numerous documents starting with the Operating Agreement for Arete LLC (Exhibit 1-A) specifically identifying Mr. Greeott and Mr. Snisky as Co-Founders and Managing Partners, as signed by both individuals on page 34. Further evidence proves Mr. Greeott and Mr. Snisky were equal partners of Arete LLC as Mr. Greeott was in control of the company servers and Information Technology, company algorithms, he created company documents, was responsible for SEC and State filings, and assisted in creating the company handbook. Pepin failed to provide any of these factual documents to prove such.

In this particular case the District Court's decision was based on unreasonable determination of facts presented to the Court. Therefore there is a reasonable probability that, absent the errors of Pepin at this critical moment in the case, the Court would have concluded differently, thus the sentence becomes unreliable. Pepin's failure to present potentially exculpatory evidence certainly points to deficient representation, U.S. v Lafall, (10th Cir. 2015). Such representation falls below an objective standard of reasonableness, a "meaningful adversdarial testing" U.S. v Cronic, U.S. 466 at 648 (1984), and is grounds for ineffective assistance as legal counsel.

3. ATTORNEY PEPIN ENGAGED IN CONSTITUTIONALLY DEFICIENT PERFORMANCE WHEN HE FAILED TO CHALLENGE AND/OR ARGUE THAT THE PETITIONER DID NOT ENGAGE WITH TEN OR MORE VICTIMS.

The Petitioner and Arete LLC, did not have ten (10) or more victims, but rather less then ten including CMG and its designee Entrust. The Government's claim that the Petitioner was responsible for ten or more victims is incorrect and again, Pepin refused to challenge the 2-Level enhancement. Pepin failed to

present the Court with the documentary evidence of a July 2011 Memorandum Of Understanding ("MOU") between CMG and Arete, signed by both parties. The MOU was the result of negotiations with CMG's President, David Sorrells, and Arete's Managing Partners, Mr. Greeott and Mr. Snisky.

Arete did not solicit funds for CMG, as Arete's obligation was to create and manage a trading strategy on behalf of CMG. This trading strategy was represented in a document called a Prospectus. Arete did collaborate with CMG in writing the Prospectuses, but did not sell, nor present Prospectuses to any of CMG' clients.

Whenever Arete spoke of the Prospectuses to any indivual or group of individuals, Arete was clear in stating "we are sharing information as we do not solicit or sell anything, if you would like further information please contact your Licensed Representative that you have a previous relationship with." The Prospectuses have this clearly stated at the top of the first page.

The Court states "why would I want to hear evidence on whether there were ten or more victims? It's not being contested" (Tr P.6-7 L.25-1). Pepin egregiously failed to challenge that the Petitioner engaged with ten or more victims.

The Government's Agent, Ms. Anderson, says "this is a list of Brokers that Gary Snisky used, and the corresponding investors that the Brokers brought into the program" (Tr P.9, L.10-12) and "he directly brought the investors underneath his name in" (Tr P.9, L.18). This is not factual, because the SEC Regulates the fiduciary responsibility of a Broker and/or an Agent with a Supervisory Licensed Representative, requiring a NASD Series 26 License. Snisky does not have a Series 26 Supervisory License and does not have any investors managed underneath his name. Pepin failed to object to such claims and should have provided the necessary SEC documentation to reveal that Snisky could not have managed any Broker, Agent, or individual investor. Further, Pepin should have objected to Agent Anderson's testimony and demanded cross examination of pertinent witnesses

to prove where and who Snisky met with, and what materials he provided, and how he (Petitioner) procured funds from these individuals, as the burden of proof rests with the Government. The Court stated "Thus a fraud that involved only three participants, but used in unknowing services of many outsiders, could be considered extensive," and the Court continues "...do I find on the basis of the evidence before me that, in fact, this is otherwise extensive, and my answer is no."[1] Petitioner maintains that Pepin should have argued that there does not exist the sufficient facts or witnesses to justify the 2-Level enhancement because there were ten (10) or more victims.

The Petitioner contends Pepin rendered Constitutionally Deficient Performance as the Sixth Amendment to the United States Constitution guarantees the defendant the right to confront adverse witnesses through cross-examination. See Davis v Alaska, 415 U.S. 308, 315 (1974). Indeed, cross-examination is "the principle means by which the believability of a witness and truth of his testimony are tested," Davis, at 316. The Sixth Amendment encompasses cross-examination necessary to present the theory biases and motives for testifying. The Petitioner maintains that the exculpatory evidence would have been favorable to the Petitioner had Pepin cross-examined the Government's witnesses, and by Pepin not doing a better job of undermining one witness's credibility and protecting another one from damaging testimony can fall so far below an objective standard of reasonableness that it qualifies as constitutional ineffectiveness. The Delaware Supreme Court ruled on December 14, 2015 (Starling v State, BL 409853, Del., No. 533).

Unfortunately, Pepin again failed Petitioner's Due Process and prejudiced ensued continually throughout these Court proceedings.

---

1. Quote Tr. P.22, L.9-17

4. ATTORNEY PEPIN ENGAGED IN CONSTITUTIONALLY DEFICIENT PERFORMANCE WHEN HE FAILED TO CHALLENGE AND/OR ARGUE THAT THE PETITIONER DID NOT ENGAGE IN SOPHISTICATED MEANS AND THE COURT'S 2 LEVEL ENHANCEMENT CONSTITUTED PROCEDURAL ERROR.

The District Court erroneously imposed a 2-Level enhancement for Sophisticated Means under 2B 1.1(b)(10). Pepin should have objected that there was no evidence to support such a claim. In fact, the mitigating evidence would prove otherwise. Sophisticated Means - for purposes of subsection (b)(2), requires especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells or offshore financial accounts ordinarily indicates Sophisticated Means. There was not anything "especially complex" or "especially intricate," in the manner which these Prospectuses were written. There were no corporate shells, no off-shore financial accounts or other fictitious entities. The standard format of similar organization forms for a Prospectus was used, and is not the result of a sophisticated construct. In fact, Managing Partner, Mr. Greeott, was also in contact with a third party company that specialized in the organization and filing of the Prospectuses with the SEC and it's Edgar Database, as per Regulation D Rule(s) 505. Mr. Greeott directed and signed for the filing of such documentation and Arete paid for this service.

Therefore, Pepin should have objected to the Sophisticated Means enhancement and provided the Court with the factual data taken directly from the Bloomberg Terminal Screen-shots identifying all relevant information of the financial instruments, or Collateralized Mortgage Obligation Bond, demonstrated within the prospectus. This information comes from the bond itself and is not made up projections. These are the bond's factual cash flow tables (Exhibit 1-C) and future values over a stated period of time.

13

5. ATTORNEY PEPIN ENGAGED IN CONSTITUTIONALLY DEFICIENT PERFORMANCE WHEN HE FAILED TOP ARGUE THAT THE PETITIONER DID NOT ACT AS INDIVIDUAL ORGANIZER AND LEADER.

Organizer and Leader was another 4-Level enhancement imposed on the Petitioner with no rebuttal or defense from Pepin at the sentencing hearing. Although the Petitioner was co-owner of Arete, and the company was requested to invest funds for Cornerstone Marketing Group, LLC ("CMG"), he did not interact with CMG's clients. The Petitioner and his co-owner, Mr. Greeott, were equal participants in Arete's business activities and Greeott only received a six (6) month sentence, as compared to the Petitioner's eighty-four (84) month sentence. Mr. Greeott was involved with every aspect of Arete's relationship with CMG and shared equally with petitioner regarding all daily repsonsibilities, equal parity, and again unchallenged by Pepin solely due to his ineffectiveness. Greeott corresponded exclusively with CMG and Sorrells on the preparation and editing of the Prospectuses and Pepin never provided evidence to support their exclusive collaboration revealing their Organization and Leadership Roles.

Pepin should have provided the Court with evidence including emails from CMG to Greeott requesting changes and additions to the Prospectuses and the return emails from Greeott performing such changes. Further evidence includes Arete's company server daily logs that registered a chronological list of these requests and changes as performed by Greeott to the Prospectuses.

Mr. Sorrells met with Petitioner and Mr. Greeott in spring of 2011 and requested Arete to create a trading model and write a Prospectus for CMG's clients. Arete and CMG also agreed upon a Memorandum Of Understanding ("MOU") that outlined the business relationship between CMG and Arete. The signed MOU created a contract between CMG and Arete, not Arete and CMG's clients. The MOU was singed by Sorrells, Greeott, and Petitioner. Arete had no verification of who CMG's clients were, what investments the clients held, or how much value the clients maintained under management with CMG. Arete performed as directed by CMG

14

and did not interact with it's clients. Arete's client was CMG and Pepin never voiced this information so as to provide a defense for this enhancement.

How could Arete and only one of it's owners, the Petitioner, be held responsible as the Organizer and Leader when there is no principle of law or logic that supports the Government's position that the petitioner should be held solely accountable for everything that went wrong? Mr. Greeott was a co-owner of Arete and accepted a similar salary and equally owned the real estate property purchased, as well as, approved the agreed upon Prospectus including the $400,000 in commissions. How does the Petitioner become the sole Organizer and Leader of a scheme directed by CMG and principle officer David Sorrells? How could Sorrells have a business agreement for "activities designed to drive income into Zeek Rewards" (Bell v Disner, 3:14CV91, Dec. 18 2014) and promise substantial payouts to all participants of Zeekrewards.com, then induce Arete into this massive $700 million dollar Ponzi and Pyramid scheme, but not be held Organizer and Leader? Is it because Sorrells was already cooperating with the Government to persuade Arete to join Zeek and in return Sorrells would not be charged by the Prosecutor in the Zeek case, while the Petitioner receives an eighty-four (84) month sentence? See SEC v Rex Venture Group, LLC d/b/a Zeekrewards.com, No. 3-12-CV-519, Aug. 12, 2012, 5th Circuit. How could Sorrells benefit from the $4.18 million invested at Arete by requiring $400,000 of commissions and not be the Organizer and Leader? Pepin should have argued these discrepancies on behalf of his client, rather than advise his client (Petitioner) to agree to anything as long as it did not jeopardize the 3-Level downward adjustment for acceptance of responsibility, U.S. v Castillo, 13-11007.

David Sorrells, was the person leading from CMG and the organizing entity with Ultimate Authority over the content of the Prospectus, including control for content and to whom and how to communicate it. See Janus Capital Group, Inc, v First Derivative Traders 564 US, 131 S.Ct. 180 L.Ed.2d 166, June 2011. In absence of effective counsel, these arguments went unquestioned.

6. THE ACCEPTANCE OF TERMS OF THE PLEA AGREEMENT WERE INVOLUNTARY AS A DIRECT RESULT OF ATTORNEY PEPIN'S INEFFECTIVENESS ASSISTANCE OF COUNSEL.

Petitioner contends that Pepin was not ready to try this case and was lost in the complexity of the issues. Pepin was ill prepared or uninterested with the indepth rules and regulations of Security Laws, the Safe Harbor Provision (15 U.S. Code 78U-5), the Dodd Frank legislation and the Federal Reserve Act, 12 U.S.C. §343, as Amended 2010, Pub. L.111-302, §1101(a)(1)-(4), and those facts mitigating the charges. Further, Pepin failed to disclose to Petitioner that both his parents died two months prior to defending Petitioner at trial and that he was not prepared. Instead Pepin, coerced Petitioner to accept a plea agreement while falsely promising Petitioner that he would submit mitigating evidence against the facts in this case. If Pepin had not advised and assured Petitioner that the facts were in dispute, and would be further argued, Petitioner would not have taken the Plea Agreement.

7. ATTORNEY PEPIN'S CONDUCT AT PLEA AND SENTENCING RENDERED CONSTITUTIONALLY DEFICIENT PERFORMANCE.

Petitioner maintains that he did not knowingly "devise a scheme to defraud..." and "acted with specific intent to defraud..." and "the scheme employed false or fraudulent pretenses..." (PA P.5 ¶10). Petitioner believed he was taking the necessary and correct actions to fulfill the Prospectuses and Pepin should have argued that mitigating evidence would have demonstrated Petitioner's lack of fraudulent intent, but rather his good faith efforts. The facts include; 1. Arete opened the proper accounts to purchase the bond; 2. Arete wired transferred the money to the accounts; 3. Arete filed proper SEC Registration and Edgar Data-Base documents; 4. Arete opened bank accounts to receive and distribute the bond coupon payments; and 5. Arete was accepted as a SEC Registered Investment Advisor.

Under anti-fraud statutes, false representations or statements or omissions

16

of material facts do not amount to a fraud unless done with fraudulent intent. However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith, U.S. v Litvak, 808 F.3d 160; No. 14-2902-CR, 2nd Circuit, 2015. The burden of proof is on the Government to prove beyond a reasonable doubt the Petitioner's fraudulent intent. The Prosecution has alleged the Petitioner devised a scheme to defraud under the bank, mail and wire fraud statutes. Thus the Prosecution must then specify facts, not merely in general words of the statute, but with such reasonable particularity as will apprise the defendant, with reasonable certainty, of the nature of the accusation as will enable the Court to say the facts stated are sufficient in law to support a conviction. See Nader v U.S at 20-24, 119 S.Ct. 1827, (1999).

At sentencing, Pepin should have been coherent and presented a cogent and compelling argument supported with mitigating evidence. Instead Pepin repeatedly called Petitioner a liar (Tr. P.41 L.15, P.42 L.3), a fraud and creator of the scheme (Tr. P.41 L.11-25). Rather than arguing for the same 6 month sentence as Mr. Greeott (Tr. P.37 L.25), Pepin undercut the argument and repeatedly said he expected Petitioner to receive a longer sentence (Tr. P.37 L.24, P.38 L.1-2). Rather than showing CMG responsible for the operating expenses through the MOU signed by both partners, Pepin's arguments were literally incomprehensible, (Tr. P.37 L.37-43).

While the Prosecution presented witnesses and irrelevant, prejudicial and hearsay statements, Pepin did not object to any of it (Tr. PP.5-19). Adding insult to injury, Pepin allowed the Prosecutor to label Petitioner as a recidivist without objection (Tr. P.32 L.23). The Court prejudiced the Petitioner by agreeing to such a characterization without any factual support (medical, factual or legal), thus violating the Petitioner's Due Process.

Admission of Petitioner's guilt by Pepin mandates presumption of prejudice, statements made by Pepin were equivalent to concessions of guilt, causing the Court to conclude with the Prosecutions arguments. This blatant error of Pepin

had a probable effect on this Honorable Court's sentencing decision that results in a serious injustice if uncorrected, <u>U.S. v Webb</u>, 98 F.3d 585, 10th Cir. 1998.

8. **ATTORNEY PEPIN RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO CHALLENGE PROSECUTORIAL AND GOVERNMENT MISCONDUCT.**

On or about December 12, 2012, Treasury Agent Mr. Loeker called Trade Station Securities and had Arete's business accounts closed without Petitioner's knowledge. These accounts were to purchase the bonds in furtherance of the Prospectus. The Prosecution's charge against the Petitioner is based on the fact that the bonds were not purchased. Mr. Loeker caused the accounts to be closed and the bonds to go unpurchased. The prosecution then charged the Petitioner for the failure to purchase the same bonds. This is Prosecutorial Misconduct. The second Prosecutorial Misconduct occurred when the Government set up a Chinese Wall between Arete and CMG because Mr. Sorrells was working at the direction of the Government to entrap Arete in purchasing investments in Zeek Rewards using CMG client funds. The third instance of Prosecutorial Misconduct occurred when the Prosecutor did not divulge that Greeott and Petitioner were partners and that Greeott was "...he was always an independent contractor" (Tr. P.35 L14-15). The Prosecution had evidence that reveals Greeott as a partner by State and SEC Filings, as well as, Arete's signed Operating Agreement, but chose to with hold this exculpatory evidence..See <u>Brady v United States</u>, 83,87 S.Ct. 1970.

Thus a cumulative error analysis aggregates all errors found to be harmless and "analyses whether their cumulative effect on the outcome of the proceedings is such that collectively they can no longer be determined to be harmless." See <u>U.S. v Rivera</u>, 900 F.2d 1462 (10th Cir. 1990). The cumulative error must be harmless beyond a reasonable doubt, in accordance with <u>Chapman v California</u>, 386 U.S. 18, 17, Ed.2d 705, 87 S.Ct. 1967. Therefore, movant asks that the Court grant the following relief: Vacate Sentence.

Respectfully submitted,

_____
Gary Snisky