IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff-Respondent,<br><br>        vs.<br><br>1. GARY SNISKY,<br>    Defendant-Movant. | Civil Action: 16-cv-01044-RM<br><br>Criminal Case: 13-cr-00473-RM-1<br><br>Honorable Raymond Moore<br>District Court Judge |

### Government's Response to § 2255 Motion

Gary Snisky seeks to vacate his convictions and sentence under 28 U.S.C. § 2255. (Docs. 155, 156.) His motion should be denied.

**Rule 5 Statement**

Pursuant to Rule 5 of the Rules Governing Section 2255 proceedings, the government provides the following preliminary information.

1. Snisky is in prison for mail fraud and money laundering. (Doc. 135.)

2. Snisky's motion is timely. When a defendant appeals his conviction, the one-year deadline runs from the later of (1) the expiration of the time for filing a petition for certiorari, or (2) the date on which the Supreme Court disposes of the petition. *See* 28 U.S.C. § 2255(f)(1); *United States v.*

*Burch*, 202 F.3d 1274, 1276, 1279 (10th Cir. 2000). Here, the time for filing a certiorari petition expired in March 2016 — 90 days after the court of appeals dismissed Snisky's direct appeal. *See* Doc. 154; Sup. Ct. R. 13. Snisky's motion was filed in May 2016. (Doc. 155.)

3. No evidentiary hearings have been conducted.

4. The necessary transcripts have been prepared and are on file.

**Statement of the Case**

Snisky operated a private equity firm which offered moderate to high returns in exchange for investment opportunities in bonds, futures trading, and other offerings. (Doc. 100 at 7-8, 10.) He also received investments for a trading program for the futures market that he falsely claimed was successful and proprietary. (*Id.* at 11-12.) He received a net of approximately $4,180,540.81 in investor money that was supposed to be invested in Ginnie Mae bonds. (*Id.* at 12.) However, Snisky did not use any of the investor money to purchase bonds. (*Id.*) He received $321,346.26 from investors for trading in the futures market, but most of this money was not invested as promised. (*Id.* at 10-11.)

As a result of his investment fraud scheme, Snisky was indicted on thirteen counts of mail fraud under 18 U.S.C. § 1341, and five counts of money laundering under 18 U.S.C. § 1957. (Doc. 2 at 1-6.) The indictment also contained a forfeiture allegation which provided Snisky with notice that the United States would seek a forfeiture money judgment pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). (*Id.* at 6-7.)

Snisky subsequently entered into a plea agreement with the government. He agreed to plead guilty to one count of mail fraud (Count 2) and one count of money laundering (Count 14). (Doc. 100 at 1.) He agreed that the loss attributed to him for sentencing guideline purposes was $5,226,965.93.[1] (*Id.* at 2, n.1.) He agreed to the entry of a preliminary order of forfeiture for a personal money judgment in the amount of $2,531,052.61.[2] (*Id.* at 3, 16.) And he agreed to the following sentencing guideline enhancements:

---

[1] This included the losses of two investors who had invested in an earlier bond program but were told their money had been rolled into the Ginnie Mae bond program. (Doc. 100 at 13.)

[2] The restitution amount was lower than the loss amount because the government had already seized money and assets through asset forfeiture and had returned that money to the victims. (Doc. 100 at 2, n.1.)

- An 18-level enhancement under USSG §2B1.1(b)(1)(J) "because the loss was more than $2,500,000 but less than $7,000,000." (*Id.* at 14.)
- A 2-level enhancement under USSG §2B1.1(b)(2)(A)(i) "because there were more than 10 victims." (*Id.*)
- A 2-level enhancement under USSG §2B1.1(b)(10) "for sophisticated means." (*Id.*)
- A 4-level enhancement under USSG §3B1.1(a) for being an "'organizer or leader' of a criminal activity that was 'otherwise extensive.'" (*Id.*)

Snisky agreed not to contest these sentencing factors in exchange for the government's recommendation that he receive an additional third point for acceptance of responsibility. (*Id.* at 2.) This was a significant concession because Snisky entered into a plea agreement only a month before the scheduled start of his three-week trial. (Docs. 84 and 97.)

Along with his plea agreement, Snisky filed a "Statement in Advance of Plea of Guilty," in which he stated, among other things, that: (1) the nature of the charges against him had been explained to him by his lawyer, Robert Pepin; (2) he had discussed the case and his guilty plea with his lawyer; (3) he was satisfied with his lawyer and believed he had been represented effectively and competently; and (4) he had no mental reservations about his decision to plead guilty. (Doc. 101 at ¶¶1, 24-27.)

At the change of plea hearing, Snisky acknowledged that his answers to the court's questions were made under the penalty of perjury. (Doc. 149 at 3.) During the ensuing colloquy, Snisky averred that: (1) he had agreed not to dispute the sentencing calculations in the plea agreement (*Id.* at 11); (2) he had read and reviewed the "Stipulation of Facts" with his lawyer, and he admitted that these facts were true (*Id.* at 14-15); (3) he had reviewed the elements of each offense with his lawyer (*Id.* at 19); (4) he was pleading guilty of his own free will and was in fact guilty (*Id.* at 24); and (5) he was fully satisfied with the advice and representation of his lawyer (*Id.* at 5).

Before sentencing, a probation officer determined that the total loss to victims was $5,226,965.54. (Doc. 106 [sealed] at 8.) (That sum differed from the amount listed in the plea agreement, but only by 39¢.) The officer also determined that Snisky's fraud scheme involved more than 10 victims.[3] (*Id.* at 9.) The officer agreed with the government that Snisky's offenses involved sophisticated means and that Snisky was an organizer or leader of the criminal

---

[3] Snisky's stipulation and the probation office's confirmation explain why this court at sentencing stated "they found ten or more victims. Why would I want to hear evidence on whether there were ten or more victims? It's not being contested." (Doc. 150 at 6-7.)

activity. (*Id.*) However, the officer did not agree that Snisky's criminal activity was extensive. (*Id.*) Therefore, the officer recommended a two-level enhancement under USSG §3B1.1(c) for Snisky's role in the offense. (*Id.*) The probation officer concluded that Snisky's total offense level was 28, resulting in an advisory guideline range of 78 to 97 months. (*Id.* at 21.)

The court agreed with the probation officer's conclusion and sentenced Snisky to 84 months in prison. (Doc. 150 at 58.)

Snisky filed a direct appeal, but it was dismissed. (Doc. 154.) He now brings this § 2255 action, claiming that he was deprived of his Sixth Amendment right to the effective assistance of counsel. (Docs. 155 & 156.)

**General Standards**

To prevail on his ineffective-assistance claim, Snisky must establish two things:

1. His lawyer's performance was unreasonable under prevailing professional standards.
2. But for counsel's unprofessional errors, the result would have been different.

*Strickland v. Washington*, 466 U.S. 668, 687-94 (1984).

To the extent that Snisky seeks to vacate his conviction, he must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To the extent that Snisky challenges his sentence, he must show a reasonable probability that his counsel's allegedly deficient performance resulted in an increased sentence. *See Glover v. United States*, 531 U.S. 198, 203-04 (2001). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

This court may assess the two *Strickland* prongs in any order. *Id.* at 697. And it may resolve the issue on either prong alone: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

Because Snisky is pro se, his motion should be liberally construed. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this court need not fashion arguments to bolster claims that are "merely conclusory in nature and without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

This court may dispense with a hearing if "the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Consequently, this court may summarily reject any claim that rests either on invalid legal premises or on allegations that, if proved, would be insufficient to warrant relief. *See United States v. Gonzalez,* 596 F.3d 1228, 1244 (10th Cir. 2010) (hearing was unnecessary where defendant's claims failed as a matter of law); *United States v. Whalen,* 976 F.2d 1346, 1348 (10th Cir. 1992) (first inquiry is "whether the defendant is entitled to relief if his allegations are proved").

**Discussion**

Snisky presents eight claims for relief. The government will address those claims in the following order: (A) a claim that challenges the validity of Snisky's guilty plea; (B) five claims that center on counsel's failure to contest statements made at sentencing; (C) a claim that challenges disparity in sentencing; and (D) a claim that centers on counsel's failure to object to alleged instances of prosecutorial misconduct.

The government believes that Snisky's claims are facially deficient and without merit.

### A. Snisky's guilty plea was voluntary, knowing, and intelligent.

Snisky claims that his guilty plea was involuntary. (Claim 6.) In support of that claim, he makes various assertions — *i.e.*, defense counsel was "ill prepared or uninterested" in the governing law; counsel was adversely affected by the death of his parents; and counsel coerced Snisky into pleading guilty. (Doc. 156 at 16.)

For the most part, Snisky's allegations are conclusory. It is not enough to say that defense counsel was badly prepared or to suggest that he was adversely affected by events in his personal life. Snisky is required to allege specific acts or omissions and explain why those were prejudicial. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). But that sort of supporting detail is missing.

To the extent that Snisky's allegations are specific, they are also plainly refuted by the existing record.

When a defendant pleads guilty, his "statements on the record, 'as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.'" *Romero v. Tansy*, 46 F.3d

9

1024, 1033 (10th Cir. 1995) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74. Consequently, a defendant's "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.*; *see also United States v. Alvarez*, 29 Fed. Appx. 497, 498 (10th Cir. 2002) (unpublished) (defendant's conclusory allegations about being pressured into pleading guilty were properly rejected in light of statements that defendant made during the plea hearing).

Here, Snisky made sworn and solemn declarations that he understood the charges, the possible penalties, and the plea agreement. (Doc. 100 at 4, 6-7, 12-13.) He similarly declared that he was satisfied with his lawyer, that he was pleading guilty of his own free will, and that no promises had been made to him outside of the plea agreement. (*Id.* at 5, 7, 24.) Consistent with those representations, the court expressly found that Snisky's guilty plea was entered knowingly and voluntarily. (*Id.* at 25.)

Snisky suggests that defense counsel "coerced" him into pleading guilty by falsely promising to contest certain sentencing enhancements. (Doc. 156 at

16.) But that suggestion is contradicted by Snisky's assertions (1) there were no agreements or promises other than those contained in the plea agreement (doc. 100 at 7), and (2) that he had agreed not to dispute the sentencing calculations set forth in the plea agreement (Doc. 149 at 11).

Snisky does not even try to reconcile his previous declarations with his current claims. Under the circumstances, his prior representations should be credited over the allegations in his motion. *See Alvarez*, 29 Fed. Appx. at 498 (conclusory allegations that defense counsel "pressured" defendant into pleading are insufficient to overcome defendant's statements during the plea hearing); *cf. United States v. Freixas*, 332 F.3d 1314, 1318-19 (11th Cir. 2003) (in denying a motion to withdraw guilty plea, the court was entitled to discredit allegations that were inconsistent with findings when plea was entered).

### B. Counsel properly refrained from challenging offense-level characteristics.

Snisky complains that defense counsel failed to challenge various factors that increased his offense level under the sentencing guidelines:

(1) the amount of actual loss (claim one, doc. 156 at 6-8);

(2) the number of victims (claim three, doc. 156 at 10-12);

(3) Snisky's use of sophisticated means (claim four, doc. 156 at 13); and

(4) Snisky's role as an organizer or leader (claim five, doc. 156 at 14-15).

It is true that counsel did not challenge the factors that Snisky has identified. And the reason is clear: Snisky stipulated to those facts when he pleaded guilty. (Doc. 100 at 14.) Counsel cannot be faulted for failing to make meritless challenges. *See United States v. Orange,* 447 F.3d 792, 797 (10th Cir. 2006) (if the omitted issue is without merit, counsel's failure to raise it is not ineffective assistance).

Snisky also complains that defense counsel did not present a cogent and compelling argument in contesting Snisky's guilt or in mitigating the potential punishment. (Claim seven, doc. 156 at 16-18.)

That claim is merely irritating.

Snisky — a college graduate (doc. 149 at 3-4) — received detailed advisements, in person and in writing, about the offenses to which he was pleading guilty, including their elements and their underlying facts. (Docs. 100; 149.) After being so advised, Snisky admitted that the underlying facts were true and that he was in fact guilty. (Doc. 149 at 14-20, 24.) Snisky cannot

now fault defense counsel for failing to challenge the government's proof of Snisky's culpable mental state.[4]

The record refutes Snisky's assertions about defense counsel's performance at sentencing:

- Before the sentencing hearing, counsel filed an 18-page Motion for Statutory Sentence and/or Downward Departure, in which he argued for a sentence of probation based on what he described as Snisky's substantial contributions to the public, his community, his church, and his family. (Doc. 115 [restricted] at 1-18.)

---

[4] Relying on *United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015), Snisky suggests that his scheme was not fraudulent because his misrepresentations were made in good faith. (Doc. 156 at 16-17.) His reliance is misplaced. In *Litvak,* the Second Circuit overturned the defendant's fraud conviction because it found that the defendant's misrepresentations relating to securities were incapable of influencing a decision of the Treasury and thus were not material. 808 F.3d at 173-74. Here, Snisky's misrepresentations were material because they influenced the victims' decision to invest. *See* Doc. 100 at 9-10; *United States v. Camick*, 796 F.3d 1206, 1214 (10th Cir. 2015) ("A statement is material for purposes of mail fraud if it has a natural tendency to influence, or is capable of influencing a decision or action by another.") (quotation marks and citation omitted). Snisky admitted that he lied and made misrepresentations to investors. (Doc. 100 at 9-12.) Those admissions foreclosed a "good faith" defense. *See United States v. Chavis*, 461 F.3d 1201, 1209 (10th Cir. 2006) (to justify a good-faith instruction, the defendant must be able to rebut all evidence of false and misleading conduct, all failures to disclose that which should have been disclosed, and all matters that deceive and were intended to deceive).

- During the sentencing hearing, counsel conceded — as he had to do, to maintain any credibility — that the court would probably impose at least a six-month sentence (in light of the sentence imposed on Snisky's confederate, and in light of Snisky's greater role in the offense). (Doc. 150 at 37-38.) But counsel effectively addressed the prosecutor's arguments and effectively pressed every argument that could plausibly be asserted on Snisky's behalf. (*Id.* at 38-48.) Snisky has identified no plausible argument that counsel overlooked.

### C.  Counsel could not have prevented legitimate disparity in sentencing.

Snisky notes that his sentence is significantly longer than the one received by his "co-defendant," Richard Greeot.[5] That observation prompts two related claims: (1) in sentencing Snisky to a longer term, the court committed plain error in creating an "unwarranted disparity between sentences"; and (2) defense counsel was ineffective in failing to show that

---

[5] For his role in this fraud scheme, Greeot was charged in case 13-cr-00375-PAB with conspiracy to commit mail fraud, and monetary transaction in property derived from mail fraud. (Doc. 43 at 1-2.) He was convicted and sentenced to six months in prison. (Doc. 150 at 37.)

Greeot and Snisky were "equal partners of Arete LLC." (Claim two, doc. 156 at 9-10.) These claims fail as a matter of law.

*1. Court's sentencing error.* Snisky's claim of plain error at sentencing is procedurally defaulted because it could have been raised on direct appeal. *See United States v. McGaughy*, 670 F.3d 1149, 1159 (10th Cir. 2012) (if a defendant fails to raise an issue on direct appeal, he is barred from raising it in a § 2255 motion unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed).

*2. Counsel's failure to argue for an equal sentence.* Snisky has no legal right to an equal sentence. *See United States v. Ivory*, 532 F.3d 1095, 1107 (10th Cir. 2008) ("[18 U.S.C.] §3553(a)(6) does not require the sentencing court to compare the sentences of codefendants; rather, it looks to uniformity on a national scale."). But even if he had such a right, defense counsel could not be faulted for failing to complain here.

Contrary to Snisky's suggestion, it does not matter whether Snisky and Greeot were equal partners in founding and managing a corporation. What matters is the offense. And, as the prosecutor explained at sentencing, the two

men were significantly different in that regard: (1) Greeott earned the government's recommendation for a downward departure under USSG §5K1.1 based on his substantial assistance; (2) he had a minimal role in the offense; (3) Snisky designed and controlled the fraud; (4) Snisky profited on a much grander scale; (5) two of the victims predated Greeott's involvement. (Doc. 150 at 34-37.) *See United States v. Davis*, 437 F.3d 989, 997 (10th Cir. 2006) ("While similar offenders engaged in similar conduct should be sentenced equivalently, disparate sentences are allowed where the disparity is explicable by the facts on the record."); *United States v. Gallegos*, 480 F.3d 856, 859 (8th Cir. 2007) ("Disparity in sentences between a defendant who provided substantial assistance and one who provided no assistance ... is not 'unwarranted.'").

### D. Counsel had no reason to allege prosecutorial or other government misconduct.

Snisky alleges various forms of governmental misconduct: (1) closing a business account that would have been used to pay for the bonds, and then charging Snisky for failing to buy the bonds; (2) directing an individual to entrap Snisky into purchasing certain investments with client funds; and (3)

failing to disclose that Snisky and Greeot were partners. (Claim 8, doc. 156 at 18.)

Snisky's allegations are difficult to understand and can properly be denied as vague and conclusory. But the government will endeavor to address them anyway.

Snisky's first two allegations suggest that he is faulting counsel for failing to raise an entrapment defense. To raise such a defense, Snisky's lawyer would have been required to show both "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988). Snisky's allegations do not support an inference that Snisky was induced into committing mail fraud and money laundering. (And the statements he made during the change of plea hearing suggest that he was not induced.) In absence of such allegations, counsel cannot be faulted for failing to press an entrapment defense. *See Slusher v. Furlong*, 29 Fed. Appx. 490, 494-95 (10th Cir. 2002) (counsel's failure to investigate an entrapment defense did not prejudice defendant where the evidence would not have supported a viable claim).

Snisky's third allegation suggests a claim of prosecutorial misconduct under *Brady v. Maryland*, 373 U.S. 83 (1963). But Snisky's conclusory allegation does not begin to support such a claim. Presumably, Snisky was aware of the fact that he and Greeot were partners, so there was no need for disclosure. *See United States v. Burger,* 773 F. Supp. 1419, 1426 (D. Kan. 1991) (the government is not required to compile or identify evidence that, with some industry, a defendant can marshal on his own).

And even if Snisky was unaware, it is far from clear that Greeot's status was exculpatory at all (much less materially so). *See United States v. Cooper*, 654 F.3d 1104, 1119 (10th Cir. 2011) (evidence is materially exculpatory only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different). Snisky stipulated that he had been the organizer or leader of the scheme and that Greeott had been an independent contractor. (Doc. 100 at 8, 14.) And, as noted, the prosecutor explained why Snisky was more culpable. (Doc. 150 at 34-37.)

Under the circumstances, one cannot fault defense counsel for failing to raise a *Brady* claim. *See Orange*, 447 F.3d at 797.

## CONCLUSION

Snisky's motion should be denied. No hearing is necessary.

>	Respectfully submitted,
>
>	JOHN F. WALSH
>	United States Attorney
>
>	*s/ Robert M. Russel*
>	ROBERT M. RUSSEL
>	Assistant United States Attorney
>	1225 17th Street, Suite 700
>	Denver, Colorado  80202
>	(303) 454-0100
>	robert.russel@usdoj.gov
>	Attorneys for Plaintiff-Respondent

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# CERTIFICATE OF SERVICE (CM/Colorado)

I hereby certify that on  June 9, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and certify a copy will be placed in the U.S. Mail, postage pre-paid and addressed to the following:

Gary Snisky
Registration No. 40166-013
Federal Correctional Institution Camp
Joint Base MDL P.O. Box 2000
Fort Dix, NJ  08640-5433


s/ *Dorothy Burwell*
Dorothy Burwell
United States Attorney's Office
Denver, Colorado