IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**JUL 11 2016**

JEFFREY P. COLWELL
CLERK

UNITED STATES OF AMERICA,
  Plaintiff - Respondent,

      vs.

GARY SNISKY
 Defendant - Movant.

:   Civil Action: 16-cv-01044-RM
:
:
:   Criminal Case: 13-cr-00473-RM-1
:
:
:   Honorable Raymond Moore
:   District Court Judge
:

PETITIONER'S REPLY TO THE GOVERNMENT'S RESPONSE TO
PETITIONER'S MOTION PURSUANT TO 28 U.S.C. §2255

Comes now Gary Snisky, Petitioner — Pro Se, who hereby files his reply to the United States' response in opposition to relief requested in the §2255 Petition before the Court. Snisky submits that relief be granted based on the following:

MAY IT PLEASE THE COURT:

Petitioner asks that the Court hold an evidentiary hearing in order to fully develop a factual record. Lafler v Cooper, 132 S.Ct. 1376, 1392 (2012), which applied the duel prong test set forth in Strickland v Washington, 466 U.S. 668, 687 (1984), held that counsel's constitutionally deficient advice about whether to enter a guilty plea could be remedied in an action under 28 U.S.C. §2255, upon showing of prejudice. Whether there was a constitutionally deficient performance by counsel, and whether there was prejudice, under Lafler and Strickland, will depend upon a careful evaluation of the facts, including testimony.

Thus, determination of counsel's effective assistance at the pretrial stage does not focus solely on trial preparation. Lafler v Cooper, 132 S.Ct. 1376, 1385 (2012) "The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice." Lafler continues "If a plea bargain has been offered, a defendant has

the right to effective assistance of Counsel in considering whether to accept it." In negotiating a plea agreement, and presenting the Defendant's case to the Court, Pepin was ineffective when he failed to: (1) Demonstrate that Snisky and Greeott were like and equal Managing Partners in Arete; (2) He would object and mitigate the Government's loss computation; (3) Show Snisky did not have the sole leadership role; (4) Cross examine Government key witnesses and provide objections to hearsay testimony; because of these assurances and advice Snisky followed Pepin's leadership. Pepin declared a downward departure would be requested based on these submissions of facts at the Sentencing Hearing. When this advice was given by Counsel it made the Petitioner's Claim colorable simply because advice offered based on a Defense Strategy that would not occur and is considered the Defendant's misunderstanding has been deemed not to be reasonably informed. Williams v Taylor, 529, U.S. 362, 395 (2000), Kimmelman v Morrison, 477 U.S. 365, 368 (1968).

Findings of the Supreme Court, in Von Moltke v Gillies, 332 U.S. 708, 721 (1948), held that (P)rior to trial an accused is entitled to rely upon his counsel to make an independent determination of the facts, circumstances, pleadings, and laws involved and to offer his informed opinion as to what plea should be entered. Next came Hill v Lockhart, 474 U.S. 52, 58 (1985) in which the Supreme Court held that the Strickland test applies to advice given by counsel in the context of guilty plea discussions. This determination was reaffirmed more recently in Lafler when the Supreme Court declared that the Sixth Amendment requires effective assistance of counsel at all critical stages of a criminal proceeding; here we are addressing the performance of counsel during plea discussions and later in preparations for submission of mitigating facts for sentencing. Petitioner states unequivocally that Pepin fell well short of the standards established in Von Moltke and its progeny. The Government's counter assertion does not advance any insightful examination of the inter-play between Counsel and Defendant regarding the advice offered, it's quality, the discussions about this advice or the amount of time provided Petitioner to consider it in order to render an informed decision rather than one that was ill advised, mislead, and hurried.

Under the performance prong, a petitioner "need not show that counsel's deficient performance, more likely then not altered the outcome of the case... rather, he must show only a probability sufficient to undermine confidence in the outcome." This standard in "not a stringent one." "Jacobs v Horn, 395 F.3d 92, 105 (3rd Cir 2005)(quoting Strickland, 466 U.S. at 694 and Jermyn v Horn, 266 F.3d 257, 282 (3rd Cir 2001)).

A. Government claims plea was voluntary, knowing, and intelligent.

Defense counsel was ill prepared while not voicing objections to calculations determining the amount of restitution, as well as, not knowing and not inquiring into the Government's summation. Restitution and the specific amount are the essence of the offense level and the enhancement increasing the Defendant's sentence by 8 levels. Defense Counsel's position and advice to the Defendant "that challenging the Government would cause the Government to withdraw its 3-level downward adjustment for Acceptance Of Responsibility," quoting Petitioner's Memorandum Of Law (herein referred to as MOL) Page 6, Paragraph 4, was purely bad advice and evidence of ineffective counsel.

Petitioner maintains his due process right to reasonably contest errors affecting his sentence, U.S. v Castillo, 779 F.3d 318: 10th Cir 2015. Pepin did not advise the Petitioner of the Government's requirement to prove the Actual Loss Amount, nor did Pepin advise the Petitioner of the Mandatory Restitution Victims Act or Relevant Law Regarding Loss Calculation Under U.S.S.G. §2B1.1. Rather Pepin allowed the Petitioner to sign the Plea Agreement not knowing the Actual Loss. Pepin should have demanded the Defendant be afforded the opportunity to provide mitigating evidence to factual findings as per the clear language of the Plea Agreement itself. "To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the Plea Agreement" (Plea Agreement, Page 7, Paragraph 15) and further states "this stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts..." (Plea Agreement, Page 7, Paragraph 16).

Pepin, on his own, and without counseling the Petitioner decided not to present mitigating evidence and rebuttal to accept the Prosecutor's loss amount and guideline range. Defendant Snisky only accepted the Plea Agreement on the assurances of Pepin that he would challenge the loss amount and restitution order by submitting mitigating evidence to the Court at the Sentencing Hearing.

Therefore the acceptance of the terms of the guilty plea were involuntary, unintelligent, and unknowingly because the Actual Loss Amount Value was to be calculated and understood at a future date, at the Sentencing Hearing. The Defendant believed the $2.5m presented by the Government would be significantly reduced at Sentencing. A plea cannot be truly voluntary unless the Defendant possesses an understanding of the law in relation to the facts. Thus, facts unknown, qualifies this Plea Agreement as unknowing, U.S. v Broce (1989) 488 US 563, 102 L.Ed.2d 927, 109 S.Ct. 757.

The Government still to this date will not and has not answered the Defendant's claims of unsubstantiated restitution. The Government hangs it's hat on the fact that the Defendant agreed to the Plea Agreement and therefore their calculation is correct. Further, the Defendant details the correct restitution total for the Government is Defendant's original MOL (P.7, ¶1) and the Government decides to side-step this issue altogether. The Government has not fairly responded to the substance, or mitigating facts, of the Loss Amount and under Civil Rule 8(b) "is admitted if a responsive pleading is required and the allegation is not denied." Therefore, the Defendant would ask this Honorable Court to accept the Governments silence as an admission to the Defendants calculations. The Defendant being "merely irritating" does not preclude the Defendant's right to a just restitution that is provable by the preponderance of the evidence. "Any dispute as to the proper amount of restitution shall be resolved by the Court by a preponderance of the evidence. The burden of demonstrating the amount of loss sustained by the victim as a result of the offense shall be on the Government." The Mandatory Victims Restitution Act, 18 §3664A, in accordance with §3664, 3664a, 3664(d), 3664(e). See U.S. v Ferdman, 779 F.3d 1129; 10th Cir 2015 U.S. App. Lexis 2346, No. 13-2196; U.S. v Kieffer, 681 F.3d at 1168; 10th Cir 2012; U.S. v Manatau, 647 F.3d 1048; 10th Cir 2011 No. 10-4101.

## B. Government claims Counsel properly refrained from challenging offense level characteristics.

The Government begins "It is true that counsel did not challenge the factors that Snisky has identified," but states further that "Snisky (Defendant) stipulated to those facts when he pleaded guilty." However, the Plea Agreement states "the stipulated facts which are known to be in dispute (Plea Agreement P.7, ¶15) and the Defendant fully expected Pepin to challenge these facts. The Defendant fully believed in the plain language of the Plea Agreement and that the Government would be estopped by the Parole Evidence Rule. The Government demonstrated their belief in the same language of the Plea Agreement as they tried to force the Court to rule on an upward departure of the Defendant with mitigating factors. But now the Government wants to say the Defendant has no right to do so.

United States v Orange does not argue in favor of a Defense Counsel not arguing his clients case, but rather only if the "issue is without merit." Ineffective Assistance of Counsel arising from allowing the Defendant to be

enhanced for (1) Actual loss that was not proven by a preponderance of the evidence; (2) number of victims identified who met with the Defendant and procured their involvement, as the Defendant met with Sorrells and not 40 investors; (3) Sophisticated Means, which we all know has no merit and since this case was not more complicated than like offenses; and (4) Defendant was not the leader, as described in the MOL, and certainly not proven by a preponderance of the evidence. In fact, exculpatory evidence was withheld by the Government so as to not reflect the Defendant's true relationship with his co-defendant, Mr.Greeott. In Brady v United States, (1970) 397 US 742, 25 L.Ed.2d 747, 90 S.Ct. 1463, the "Prosecutor shall make timely disclosure tot he defense of all evidence or info known to the prosecutor that tends to negate guilt of the accused or mitigates the offense and in connection with sentencing..." And where was Pepin all this time? Unfortunately Pepin was concerned about his personal life, it's unfortunate tragedy, and his vacation. "[W]hen a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant to conform with the ABA Code Of Responsibility, the Court should not be required to tolerate an inadequate representation of a defendant." Advisory Committee Notes to 1979 Amendment to Fed. R. Crim. P.44(c)(quoting U.S. v Dolan, 570 F.2d 1177 (3rd Cir 1978)).

### C. Government claims Counsel could not have prevented legitimate disparity in sentencing.

The Government neglects, again, to address in it's response why it had not provided Defendant's Counsel with, what now turns out to be Exculpatory Evidence, Arete LLC's Operating Agreement. This agreement defines Arete's partners as equal in the firm, and that the Defendant was not a sole leader. The Fact that the Government supports their claim that the issues "could have been raised on Direct Appeal ," again reflects the Defendant's argument for ineffective counsel. The Defendant believed in the District Court when it stated "The Defendant is advised of his right to appeal the sentence" (Sentencing Hearing P.62, L. 21,22). The Defendant urgently requested Pepin file an Appeal immediately following the Sentencing Hearing, but Pepin flat out refused. Pepin stated that he was going on vacation the very next morning and had no interest in filing an appeal on the Defendant's behalf.

The Government's claim that the Defendant and his equal partner, Greeott, had different percentages of responsibility is ridiculous and they offer no proof. Certainly, if evidence was made available disclosing Greeott as an equal

partner, rather than an independent contractor as claimed by the Government, then there exists a reasonable probability that a different outcome would be the result. The Government further claims that Snisky profited on a much greater scale then Greeott, which is factless, unsupported and untrue. Greeott and Snisky shared equally in the total compensation, and again Defendant's Counsel never presented this information demonstrating Pepin's continued ineffectiveness.

### D. Government claims Counsel had no reason to allege prosecutorial or other Government misconduct.

The Government's inducement of a guilty plea and the Defense Counsel's lack of effectiveness was not the basis for the Defendant's claim of entrapment, but rather the Government's transfer of the funds to be invested by the Defendant for the benefit of Cornerstone Marketing Group (CMG) into Ginnie Mae Bonds. The proper accounts for purchasing such bonds were opened and funded at Tradestation. The Government contacted Tradestation, had the accounts closed, then seized and froze the funds, thus constituting the Government's entrapment and false claim that the Defendant never invested any monies in Government Bonds. Further the Government does not provide any factual documentation to conclude the Defendant specifically created and participated in a scheme to defraud knowingly, willfully, and with the intent to defraud. Defense Counsel's failure to demonstrate the Defendant acted in good faith and held an honest belief that his actions were proper and not in furtherance of an unlawful activity. Pepin should have challenged the Government with the burden to prove beyond a reasonable doubt the Defendant's fraudulent intent. Yet, once again, demonstrating Pepin's ineffectiveness as Defense Counsel. See United States v Litvak, 808 F.3d 160 at 978, No. 14-2902, 2nd Cir 2015; United States v Welbig, No. CR-14-3347: 10th Cir 2015; and United States v Manatau, 647 F.3d 1048, 10th Cir 2015, No. 10-4101.

Petitioner contends that Pepin's errors were not harmless errors as it can be concluded, with fair assurances, that the errors did substantially influence the Court. The extent to which Pepin did not advance a comprehensible defense with mitigating facts, and because the cumulative errors by Pepin were quite shocking, the Defendant was subjected to prejudice which ensued throughout these proceedings. Consequently, if not for Defense Counsel's errors it is likely that the Petitioner would have received a different outcome.

6

Respectfully Submitted,

Gary Snisky, Pro Se

Reg. # 40166-013
FCI Fort Dix Camp
P.O. Box 2000
Joint Base MDL, NJ 08640-5433

CERTIFICATE OF SERVICE

I, Gary Snisky, declare under penalties of perjury that on July 5th, 2016, I served the accompanying Petitioner's Reply To Government's Response To Section §2255 Petition on the parties listed below. This service was made by delivering envelopes containing the Reply to an Official of the Fort Dix Correctional Institution for placement in the Institution's Legal Mail System, Pre-Paid, First Class Postage was affixed to the envelopes.

Alfred A. Arraj, Clerk Of The Court
United States District Court For Colorado
901 19th Street, Room A105
Denver, CO 80294-3589

&

Robert M. Russel
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, CO 80202

Gary Snisky, Pro Se
Reg. #40166-013
FCI Fort Dix Camp
P.O. Box 2000
Joint Base MDL, NJ 08640-5433

<u>TABLE OF AUTHORITIES</u>

<u>Pages:</u>

Lafler v Cooper
132 S.Ct. 1376, 1392 (2012).....................................1,2

Strickland v Washington
466 U.S. 668, 687 (1984).......................................1,2 2

Williams v Taylor
529, U.S. 362, 395 (2000)........................................2

Kimmelman v Morrison
477 U.S. 365, 368 (1968).........................................2

Von Moltke v Gillies
332, U.S. 708, 721 (1948)........................................2

Hill v Lockhart
474 U.S. 52, 58 (1985)...........................................2

Jacobs v Horn
395, F.3d 92, 105 3rd Cir 2005...................................2
Jermyn v Horn F.3d 257, 282 3rd Cir 2001

U.S. v Castillo
779 F.3d 318: 10th Cir 2015......................................3

U.S. v Broce
488 U.S. 563, 102 L.Ed.2d 927, 109 S.Ct. 757, (1989).............3

U.S. v Ferdman
779 F.3d 1129, 10th Cir 2015 US App. Lexis 2346, No.13-2196......4

U.S. v Kieffer
681 F.3d at 1168, 10th Cir 2012..................................4

U.S. v Manatau
647 F.3d 1048, 10th Cir 2011, No.10-4101.........................4

Brady v United States
(1970) 397 US 742, 25 L.Ed.2d 747, 90 S.Ct. 1463................5

U.S. v Dolan 570 F.2d 1177, 3rd Cir 1978........................5

United States v Litvak
808 F.3d 160 at 978, No.14-2902, 2nd Cir 2015...................6

United States v Welbig
No.CR-14-3347, 10th Cir 2015....................................6

Other: (1) Mandatory Restitution Victims Act & (2) U.S.S.G. §2B1.1



Trenton P&DC NJ 086
WED 06 JUL 2016 PM

rectional Institution Camp
MDL PO Box2000
NJ 08640-5433
es 1...

ALFRED A. ARRAJ - Clerk of
the Court
United States District Court for Colorado
901, 19th Street, Room A105
Denver, CO 80202

Mail

... CORRECTIONAL INSTITUTION
P.O. BOX 2000
FORT DIX, NJ 08640

The enclosed letter was processed through special mail
procedures. This letter has been neither opened nor
inspec...ed. If the writer raises a question or problem over
which this facility has jurisdiction, you may wish to return
the material. If the writer encloses correspondence for
forwarding to another address or includes unauthorized
items, please return to the above address.